**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

JUAN PABLO PRICE,
  *Defendant-Appellant*.

No. 15-50556

D.C. No.
2:15-cr-00061-
GHK-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted November 6, 2017
Submission Vacated May 18, 2018
Resubmitted April 12, 2019
Pasadena, California

Filed April 12, 2019
Amended November 27, 2020

Before:  Ronald Lee Gilman,* Kim McLane Wardlaw,
and Jacqueline H. Nguyen,** Circuit Judges.

Order;
Opinion by Judge Wardlaw;
Concurrence by Judge Gilman;
Concurrence in Order by Judge Wardlaw;
Dissent from Order by Judge Collins

## SUMMARY***

### Criminal Law

The panel denied a petition for panel rehearing, denied on behalf of the court a petition for rehearing en banc, and filed an Amended Opinion and Concurrence, in a case in which the panel affirmed a conviction for knowingly engaging in sexual contact with another person without that other person's permission on an international flight, in violation of 18 U.S.C. § 2244(b).

---

* The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

** This case was submitted to a panel that included Judge Stephen R. Reinhardt.  Following Judge Reinhardt's death, Judge Nguyen was drawn by lot to replace him.  Ninth Circuit General Order 3.2.h.  Judge Nguyen has read the briefs, reviewed the record, and listened to oral argument.

*** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

In the Amended Opinion, the panel rejected the defendant's argument that the district court erred in giving the Ninth Circuit Model Instruction on the elements of § 2244(b), which does not require that the government prove beyond a reasonable doubt that the defendant subjectively knew that his victim did not consent to his conduct. The panel rejected the defendant's claim of instructional error because unwanted sexual contact of the type the defendant engaged in—touching first, and asserting later that he "thought" the victim consented—is precisely what § 2244(b) criminalizes. The panel explained that the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), does not alter its conclusion.

The panel held that the police had probable cause to arrest the defendant, that he was properly Mirandized, and that the district court acted within its discretion in refusing to read back to the jury portions of the victim's testimony.

Concurring that the conviction should be affirmed, Sixth Circuit Judge Gilman disagreed with the majority's holding that "knowingly" in § 2244(b) does not extend to the phrase "without that other person's permission." He wrote that despite the district court's error in refusing to instruct the jury that such knowledge was necessary to convict, the error was harmless because no reasonable juror could have concluded that the defendant subjectively believed he had permission to touch a sleeping stranger's breast.

Judge Wardlaw, joined by Judge Nguyen, concurred in the denial of rehearing en banc. She wrote that in his dissent from the denial of rehearing en banc, Judge Collins wishes to rewrite § 2244(b)—and the Ninth Circuit Model Instruction—by inserting a subjective-knowledge requirement that is at odds with the very purposes of the

Sexual Abuse Act of 1986, creating a shield for sexual predators that Congress did not intend.

Judge Collins—joined by Judges Ikuta and VanDyke as to Parts I and II, and by Judge Bumatay as to Part II(B)(1)— dissented from the denial of rehearing en banc. He wrote that the panel majority (1) erroneously holds that there was no missing element at all by reading the word "knowingly" out of § 2244(b), ignoring the plain language of the statute and disregarding applicable canons of construction; and (2) wrongly concludes that, in any event, the omission of the scienter element was harmless error.

---

## COUNSEL

Jonathan D. Libby (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Christopher C. Kendall (argued) and Julia L. Reese, Assistant United States Attorneys; L. Ashley Aull, Chief, Criminal Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## ORDER

The opinion and concurrence filed on April 12, 2019, and reported at 921 F.3d 777, is amended by the Amended Opinion and Concurrence filed in their place concurrently with this order.

With the Amended Opinion, Judges Wardlaw and Nguyen have voted to deny the petition for panel rehearing and rehearing en banc. Judge Gilman has voted to grant the petition for panel rehearing and recommends granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

Accordingly, the petition for rehearing and the petition for rehearing en banc are **DENIED**. A concurrence in the denial by Judge Wardlaw and a dissent from the denial by Judge Collins are filed concurrently with this order. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

WARDLAW, Circuit Judge:

It is a federal crime under 18 U.S.C. § 2244(b), enacted as part of the Sexual Abuse Act of 1986, to knowingly engage in sexual contact with another person without that other person's permission on an international flight. During an overnight flight from Tokyo, Japan to Los Angeles,

California, Juan Pablo Price, a forty-six-year-old man, moved from his assigned seat to an open seat adjacent to that of a sleeping twenty-one-year-old female Japanese student, where he fondled her breast and slipped his hand into her underwear, touching her vagina. The jury convicted Price under 18 U.S.C. § 2244(b), finding that the government proved beyond a reasonable doubt that Price knowingly had sexual contact with the victim and that the sexual contact was without the victim's permission. Price appeals his conviction, arguing that the district court erred in giving the Ninth Circuit Model Instruction on the elements of § 2244(b), which does not require that the government prove beyond a reasonable doubt that the defendant subjectively knew that his victim did not consent to his conduct.

We reject Price's reading of the statute as contrary to its text, the structure of the statutory scheme and its very purpose in penalizing those who sexually prey upon victims on the seas or in the air within federal jurisdiction. Congress's purpose in enacting the Sexual Abuse Act of 1986 was to criminalize sexual contact by focusing on the defendant's conduct. If the government were required to prove that the defendant subjectively knew he lacked consent, as Price urges here, every accused sexual predator could defend his admitted sexual contact in the face of no objective sign of permission by asserting a supposed subjective belief that the victim was "enjoying herself," a result directly contrary to the purpose of the 1986 Act. Even Price recognized, following his arrest, that "it sure is going to be my job not to touch a woman" whom he doesn't know and hasn't talked to. As the arresting officer responded to Price, "in your forty something years, you should've already known that[]."

Because unwanted sexual contact of the type Price engaged in—touching first, and asserting later that he "thought" the victim consented—is precisely what § 2244(b) criminalizes, we reject Price's claim of instructional error. We also conclude that the police had probable cause to arrest Price, that he was properly Mirandized, and that the district court acted within its discretion in refusing to read back to the jury portions of the victim's testimony. We therefore affirm Price's conviction and sentence.

**I.**

The objective facts are fairly undisputed. Price, then forty-six, was a passenger on the overnight flight from Tokyo, Japan to Los Angeles, California. A.M., a twenty-one-year-old college student, and her friend, Maki Fujita, were traveling on the same flight. After take-off, Price asked A.M. if he could move from his assigned seat to the unoccupied seat next to her, a seat where the video monitor was not working, explaining that his original seat had limited legroom. A.M. said "okay." Price attempted to engage A.M. in conversation, but A.M. could not speak English very well, and he eventually realized that she was not completely understanding what he was saying. A flight attendant, Hidemori Ejima, noticed that Price had changed his seat, and asked him why. When Price responded that he wanted more legroom, Ejima offered Price another seat with a working video monitor and three times more legroom. Price declined the offer—something Ejima had not seen before in his twenty-five years as a flight attendant. After food service, Ejima handed Fujita a note warning Fujita and A.M. to "watch out" for the person sitting next to them. A.M. interpreted the warning to mean that Price might try to steal her wallet or other belongings. She moved her purse and wallet deeper into her bag and fell asleep.

A.M. woke up to Price touching the right side of her body, including her arm, hip, and leg.  Thinking that Price was trying to steal the cell phone in her pocket, she moved the phone to inside the seat pocket and went back to sleep.  When A.M. awoke again, Price was touching her breast.  A.M. began panicking, but did not want to bother the people around her.  She tried to avoid Price's touch by pulling the blankets up to her shoulder and crossing her arms in front of her.  Undeterred, Price placed his blanket over both of them, covering his arms, and continued to touch her breast, first over her shirt and then under it.  Price then moved his hand into A.M.'s jeans and underwear and touched her vagina.

In a state of shock, panic, and fear, and looking for the words to tell Price to stop, A.M. twisted her body toward Fujita on her left, away from Price.  Price hauled her back around with "strong force" and tried to pull her jeans down.  At this point, Fujita woke up, and, seeing her awake, Price retreated to his seat.  When Fujita asked A.M. if she was okay, A.M. responded that she was not and asked what she should do.  Fujita told her to tell the flight attendant.  A.M. did not have the English words to explain what happened, although she was able to ask for "help."

Price's perception of the encounter differed from the others on the plane.  He testified that while his hand was on the armrest, he felt A.M.'s hand touch his.  Thinking that this could be an invitation, Price began to rub her hand.  Price stated that they started holding and rubbing each other's hands.  As he began moving his hands across A.M.'s body and to her breast area, he thought she was "enjoying herself" because she was arching her body, he could feel her heartbeat, her breathing was intense, and she was opening and closing her eyes.  It was only when Price tried to move her face toward him and A.M. would not budge that Price

thought something was wrong. At that point, Price noticed that Fujita was awake, and A.M. then got up. According to both A.M.'s and Price's accounts, no words were exchanged during this encounter. Price agrees A.M. did not verbally consent to his touching her.

While A.M. got up to tell the flight attendant what happened, Price wrote a note that he never ended up giving to A.M., which said, "If a man touches you and you don't want him to always feel free to say No." The purser or lead chief flight attendant, Yosri Zidan, then obtained written statements from both Price and A.M. Price's story was that he changed seats because he wanted more legroom; he then fell asleep and awoke to find A.M. stroking his hand.

While still in flight, the pilot sent a message to American Airlines employees at Los Angeles International Airport (LAX) that read, "WE NEED LAX POLICE TO MEET AIRPLANE [/] WE HAVE A MOLESTER/FONDLER ON BOARD." The LAX Police Department (LAXPD) then contacted the Transportation Security Administration (TSA), who in turn contacted the Federal Bureau of Investigation (FBI). Special Agent David Gates (S.A. Gates) of the FBI instructed the sergeant at LAX to first investigate the incident to determine if he needed to respond.

On February 18, 2015, after a federal grand jury indicted Price for abusive sexual contact under 18 U.S.C. § 2244(b), Price was formally arrested. Price filed a pre-trial motion to suppress evidence found in his bag and cell phone, and his statements to the LAXPD officers and to S.A. Gates, arguing that he was arrested without probable cause upon the flight's arrival at LAX and that he was questioned without being given *Miranda* warnings. The government and Price disputed the 18 U.S.C. § 2244(b) jury instruction, based on the statute's use of the word "knowingly." The district court

ultimately selected the Ninth Circuit's Model Criminal Jury Instruction for § 2244(b) and the additional instruction proposed by Price that "permission" under § 2244(b) can be express or implied, "that is[,] inferred from words or actions." The district court denied Price's request to instruct the jury that, in addition, the government must prove that Price "knew the sexual contact was without A.M.'s permission." The district court reasoned "that it is appropriate not to read into the statute that which it does not say it requires."

Price timely appeals.

## II.

18 U.S.C. § 2244(b) provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

"Sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The Ninth Circuit's model instruction provides:

> The defendant is charged in [Count _____ of] the indictment with abusive sexual contact in violation of Section 2244(b) of Title 18 of the United States Code. In order for the defendant to be found guilty of that

charge, the government must prove each of the following elements beyond a reasonable doubt: First, the defendant knowingly had sexual contact with [*name of victim*]; Second, the sexual contact was without [*name of victim*]'s permission; and Third, the offense was committed at [*specify place of federal jurisdiction*].   In this case, "sexual contact" means [*specify statutory definition*].

Manual of Model Criminal Jury Instructions § 8.180 (2010) (Ninth Cir. Jury Instructions Comm., amended 2015).  The model instruction does not ask the jury to find that the defendant subjectively knew that he lacked the victim's permission.  Price argues that the model instruction was given in error.

Whether "a jury instruction misstates elements of a statutory crime" is an issue we review de novo.  *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997).  We have not yet addressed whether the term "knowingly" in § 2244(b) applies to the phrase "without that other person's permission."  As a matter of statutory interpretation, we generally consider the statute's language, purpose, history, and past decisions and controlling law to determine whether the district court properly instructed the jury.  *See Taylor v. United States*, 495 U.S. 575, 581 (1990); *United States v. Lo*, 447 F.3d 1212, 1229 (9th Cir. 2006).

## A.

Our analysis begins with the text of the statute.  "In determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress."  *United States v. Johal*, 428 F.3d 823, 826 (9th Cir. 2005).  We keep in mind the "background rules of the

common law in which the requirement of some *mens rea* for a crime is firmly embedded." *Staples v. United States*, 511 U.S. 600, 605 (1994) (citation omitted).

We begin with the statutory text and interpret "statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." *I.R. ex rel. E.N. v. L.A. Unified Sch. Dist.*, 805 F.3d 1164, 1167 (9th Cir. 2015) (citation omitted).  Examining the text of § 2244(b), we conclude that its most natural grammatical meaning is that the government must prove that the defendant knew he engaged in sexual contact, not that it prove that the defendant subjectively knew he lacked consent.  The term "knowingly" modifies only the verb phrase "engages in sexual contact with another person" and does not modify the adverbial prepositional phrase "without that other person's permission."

In *United States v. X-Citement Video, Inc.*, the Supreme Court examined the Protection of Children Against Sexual Exploitation Act of 1977, which punishes, *inter alia,* any person who "knowingly transports or ships in interstate or foreign commerce" or who "knowingly receives, or distributes . . . , or knowingly reproduces" from such commerce "any visual depiction, if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  513 U.S. 64, 68 (1994) (quoting 18 U.S.C. § 2252(a) (1988 ed. & Supp. V 1993)).  The "critical determination" the Court had to make was whether the term "knowingly," in the phrases "knowingly transports or ships" and "knowingly receives, or distributes" modifies not only those verbs but also the phrase "the use of a minor."  *Id.*  The Court recognized that "[t]he most natural grammatical reading . . . suggests that the term 'knowingly' modifies only the surrounding verbs: transports, ships,

receives, distributes, or reproduces." *Id.* at 68. Nevertheless the Court was "reluctan[t] to simply follow the most grammatical reading of the statute," because the results of that reading were "positively absurd" and would "sweep within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material." *Id.* at 69–70.

We followed suit in construing the most natural grammatical reading of a statute in *United States v. Backman*, 817 F.3d 662 (9th Cir. 2016). There we construed an analogous mens rea requirement in a criminal sex trafficking statute, the Trafficking Victims Protection Act of 2000. That statute required proof that the defendant "*knowingly*—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person." *Id.* at 666–67 (quoting 18 U.S.C. § 1591(a)). We rejected the defendant's argument that the government must prove, in addition to proving knowing recruitment, that he knew his acts affected interstate or foreign commerce, concluding "it is most natural to read the adverb 'knowingly' in [18 U.S.C.] § 1591(a) to modify the verbs that follow: 'recruits, entices, harbors, transports, provides, obtains, or maintains.' The phrase 'in or affecting interstate or foreign commerce' describes the nature or extent of those actions but, grammatically, does not tie to 'knowingly.'" *Id.* at 667.

Similarly, here, the phrase "without that other person's permission" describes the nature or extent of the prohibited action "engag[ing] in sexual contact" but, grammatically, does not tie to the term "knowingly." 18 U.S.C. § 2244(b). Price attempts to distinguish *Backman* on the ground that the phrase "in or affecting interstate or foreign commerce" is

jurisdictional, but that was only a secondary rationale for our *Backman* holding, which we found persuasive in a Seventh Circuit opinion, *United States v. Sawyer*, 733 F.3d 228 (7th Cir. 2013). The principal rationale in *Backman* was our view of the statute's most natural grammatical reading, which demonstrates the statute's ordinary meaning.

Our reading of § 2244(b) is consistent with our precedent for interpreting mens rea requirements in criminal statutes. "When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis v. United States*, 135 S. Ct. 2001, 2010 (2015) (internal quotation marks and citation omitted). Thus, although courts must be careful not to interpret crimes too broadly, "[i]n some cases, a general requirement that a defendant *act* knowingly is itself an adequate safeguard." *Id.*

Here, the other elements of § 2244(b) provide that adequate safeguard. First, the statute already provides for a mens rea requirement that the defendant engage in sexual contact knowingly, rendering unnecessary a second mens rea requirement. *See Lo*, 447 F.3d at 1230 (finding that a conviction under 21 U.S.C. § 841(c)(2) did not require knowledge that the substance was a listed chemical, because the mens rea requirement that the defendant knowingly possessed or distributed the chemical was sufficient to ensure that "apparently innocent conduct is not criminalized"). Second, the government must also prove beyond a reasonable doubt that the sexual contact was without the victim's permission, which is sufficient to render it wrongful. *See, e.g.*, *United States v. Gavin*, 959 F.2d 788, 791–92 (9th Cir. 1992). As the district court properly recognized in instructing the jury on "permission," although

it is an objective concept, it includes both explicit and implicit permission, and may be proven by circumstantial evidence. Thus, hewing close to the natural grammatical reading of "knowingly" here does not portend "absurd" results that would sweep up innocent actors not intended to be covered by the statute. *Cf. X-Citement Video*, 513 U.S. at 69.

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009), is inapposite. In *Flores-Figueroa*, the Supreme Court considered a federal aggravated identity theft statute that provided for an increased criminal penalty of an additional two years of imprisonment for certain offenses if the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The Court concluded that the term "knowingly" modified the entire sentence such that the government needed to show that the defendant knew that the "means of identification" belonged to "another person." *Flores-Figueroa*, 556 U.S. at 657; *see also id.* at 650 ("It makes little sense to read the provision's language as heavily penalizing a person who 'transfers, possesses, or uses, without lawful authority' a *something*, but does not know, at the very least, that the 'something' (perhaps inside a box) is a 'means of identification.' Would we apply a statute that makes it unlawful '*knowingly* to possess drugs' to a person who steals a passenger's bag without knowing that the bag has drugs inside?").

Price argues that *Flores-Figueroa* requires us to adopt his interpretation of § 2244(b) because "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 652. But Price erroneously takes the *Flores-Figueroa* holding out of the

context of the aggravated identity theft statute. As the Court reasoned, *Flores-Figueroa*'s directives were specific to particular grammatical contexts that "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence." *Id.* at 650. This grammatical structure does not appear in § 2244(b), where the phrase in question— "without that other person's permission"—is not the object of the sentence but an adverbial prepositional phrase.

Second, and most importantly, in *Flores-Figueroa*, the mens rea requirement was necessary to "separate wrongful conduct from otherwise innocent conduct." *Elonis*, 135 S. Ct. at 2010 (internal quotation marks and citation omitted). By contrast, "[h]ere, there is no potential for the penalization of innocent conduct nor do we face constitutional avoidance concerns." *United States v. Jefferson*, 791 F.3d 1013, 1016– 18 (9th Cir. 2015) (finding it unnecessary to extend the "knowingly or intentionally" mens rea to the type and quantity of drugs at issue, where the requirement that the government prove the other elements of the case was "sufficient to ensure the statute penalizes only culpable conduct"). We have explicitly rejected the notion that the Court's reading of "knowingly" in *Flores-Figueroa* compels the same reading in every criminal statute that uses the word "knowingly." *See id.* at 1017–18 ("Because [21 U.S.C.] § 960's statutory text and structure are not parallel to that of § 1028A(a)(1), the ordinary grammatical interpretive rules articulated in *Flores-Figueroa* do not apply here."); *United States v. Stone*, 706 F.3d 1145, 1147 (9th Cir. 2013) ("[T]he Court in *Flores-Figueroa* did not announce an 'inflexible rule of construction.' Rather, statutory interpretation remains a contextual matter." (citations omitted)); *United*

*States v. Castagana*, 604 F.3d 1160, 1166 (9th Cir. 2010) (rejecting the argument that the court "treat 'with intent' the same way the Supreme Court treated 'knowingly' in *Flores-Figueroa*" because "the language of the statute in *Flores-Figueroa* is not parallel to that of [18 U.S.C.] § 1038(a)(1)"). Indeed, the *Flores-Figueroa* Court itself cautioned that "the inquiry into a sentence's meaning is a contextual one." 556 U.S. at 652.

The Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), does not alter our conclusion. There, the Supreme Court held that 18 U.S.C. § 924(a)(2), which applies to one who "knowingly violates" 18 U.S.C. § 922(g), applied "knowingly" to each element of § 922(g) save the jurisdictional element. *Rehaif*, 139 S. Ct. at 2195. *Rehaif* did not change the governing principles of statutory interpretation set out in prior cases. *See id.* at 2195–97. And *Rehaif* examined a different statute with different text, structure, and legislative history, addressing different conduct. In § 924(a)(2), "'knowingly' . . . modifies the verb 'violates' and its direct object, which in this case is § 922(g)." *Id.* at 2195. This complete phrase is "notably not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends." *Id.* at 2196. Section 2244(b) raises those questions, because while "knowingly" modifies the verb "engages in" and the object, "sexual contact," the sentence contains additional prepositional phrases including "without that other person's permission."

The Supreme Court in *Rehaif* found "no convincing reason to depart from" the "longstanding presumption . . . that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory

elements that criminalize otherwise innocent conduct.'" 139 S. Ct. at 2195 (quoting *X-Citement Video*, 513 U.S. at 72). By contrast, the proposed "innocent conduct" at issue here, *id.*, is sexual contact with the intimate parts of another person's body. Such action necessarily implicates the person of another, unlike the possession of a firearm at issue in *Rehaif*. *See id.* at 2197. The normal default between two people for such intimate sexual activity, without any communication or prior understanding, is *not to touch*. The person who does so anyway is not engaged in "entirely innocent" conduct. *Id.* Under § 2244(b), the government must prove that the victim did not consent beyond a reasonable doubt. If there is objective evidence, either direct or circumstantial, that creates reasonable doubt about whether the victim did not consent, either explicitly or implicitly, the government has not proven its case. This proof is sufficient to separate wrongful conduct— inappropriate and unwanted sexual touching—from innocent conduct, in contrast to the "knowing" requirement in § 922(g). To hold otherwise would be to suggest the statute protects even patently unreasonable beliefs of invitation, which finds no support in the statutory text or history.

As the *X-Citement Video* Court advised, however, this does not necessarily end our analysis "because of the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed." 513 U.S. at 69. We therefore next examine the structure, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018), and legislative history of the statute, to determine if we, like the *X-Citement Video* Court, should be reluctant to "simply follow the most grammatical reading of the statute," 513 U.S. at 70.

As the *X-Citement Video* Court advised, however, this does not necessarily end our analysis "because of the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed." 513 U.S. at 69. We therefore next examine the structure, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018), and legislative history of the statute, to determine if we, like the *X-Citement Video* Court, should be reluctant to "simply follow the most grammatical reading of the statute," 513 U.S. at 70.

**B.**

Section 2244(b) is part of a statutory scheme criminalizing abusive sexual contact. First, subsection (a) criminalizes conduct that, "had the sexual contact been a sexual act," would be "punished [elsewhere] by this chapter." 18 U.S.C. § 2244(a). Second, subsection (b) criminalizes sexual contact "[i]n other circumstances." *Id.* § 2244(b). Finally, subsection (c) enhances the sentence "[i]f the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years." *Id.* § 2244(c).

Subsections 2244(a) and 2244(b) work in parallel ways, and we must read the two subsections together. *See United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."). Both § 2244(a) and (b) require that the defendant "knowingly" have "sexual contact" and set forth one additional element of the offense. In § 2244(a), the additional element the government must prove is that the sexual contact would be punishable by certain other statutes

if the sexual contact had instead been a sexual act;[1] in
§ 2244(b), the additional element is the victim's lack of
permission. The government is not required to prove that the
defendant knew that the second element of § 2244(a) was
met—in other words, the government need not prove that the
defendant knew that the sexual contact he engaged in would
have been punished by another law if the contact had risen
to the level of a sexual act. We have not read § 2244(a)(3)
to tie the word "knowingly" to the second element. Courts
have instead read the second element as subject to objective
proof. *United States v. Granbois*, 376 F.3d 993, 995 (9th
Cir. 2004) (delineating the elements for conviction under
§ 2244(a)(3), which does not include a mens rea requirement
for the second element); *see also United States v. Jennings*,
496 F.3d 344, 352 (4th Cir. 2007) (concluding that to
determine a violation of § 2244(a)(3), "under the

---

[1] 18 U.S.C. § 2246(2) defines the term "sexual act" as

> (A) contact between the penis and the vulva or the
> penis and the anus, and for purposes of this
> subparagraph contact involving the penis occurs upon
> penetration, however slight;

> (B) contact between the mouth and the penis, the
> mouth and the vulva, or the mouth and the anus;

> (C) the penetration, however slight, of the anal or
> genital opening of another by a hand or finger or by
> any object, with an intent to abuse, humiliate, harass,
> degrade, or arouse or gratify the sexual desire of any
> person; or

> (D) the intentional touching, not through the clothing,
> of the genitalia of another person who has not attained
> the age of 16 years with an intent to abuse, humiliate,
> harass, degrade, or arouse or gratify the sexual desire
> of any person.

straightforward language of the statute, we are to read § 2243(a) and determine whether [the defendant] had committed that offense, substituting for 'sexual act' the term 'sexual contact'"). To read "knowingly" to apply to the second element in § 2244(a) would both be grammatically unnatural and produce absurd results. Because a conviction under § 2244(a) does not require that the government prove the defendant's knowledge of the additional element, we should read § 2244(b) in the same manner.

Price argues that reading the statute along with its neighboring provisions, 18 U.S.C. § 2241(c) and § 2243(a), requires the opposite interpretation. Section 2244(b) follows the same general sentence structure as the other two subsections—although the other two subsections address sexual acts with minors, a more serious crime than sexual contact. According to Price, because § 2241(d) and § 2243(d) expressly provide that "the Government need not prove that the defendant knew" the age of the minor, the absence of such a provision in § 2244(b) indicates that Congress intended that the government must prove that the defendant knew that sexual contact was without permission. We disagree.

Sections 2241 (aggravated sexual abuse) and 2243 (sexual abuse of a minor or ward) impose severe penalties, with maximum sentences of life imprisonment and fifteen years, respectively. By contrast, § 2244(b) was first passed as a "petty offense" punishable by no more than six months' imprisonment. Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87, 100 Stat. 3592, 3622 (1986); H.R. Rep. 99-594, at 19 nn. 75–76. It stayed that way for two decades before being increased without comment in 2006, *see* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1177(b)(2), 119 Stat.

2960, 3125 (2006), and now prescribes a maximum sentence of no more than two years.[2]   We generally expect that criminal laws subject to potentially more severe penalties would require more stringent mens rea requirements.  *See Staples*, 511 U.S. at 618 ("[A] severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement."); *cf. United States v. Gomez-Leon*, 545 F.3d 777, 793 (9th Cir. 2008) ("Commensurate with lesser punishment is a lesser mens rea requirement . . . ." (citation omitted)).   Thus, Congress's decision to expressly eliminate the mens rea requirements in § 2241 and § 2243 is not instructive of the proper interpretation of § 2244(b).  Sections 2241 and 2243, with their harsh sentencing maximums, require the explicit statement that "the Government need not prove that the defendant knew" the age of the minor victim in order to overcome the strong presumption "that Congress did not intend to eliminate a *mens rea* requirement."   *Staples*, 511 U.S. at 618.  Section 2244(b) does not give rise to the same strong presumption because its violation bears a dramatically less severe consequence.  Moreover, § 2243(c) provides that mistake about age can be a defense, making § 2243(d) necessary to clarify that knowledge of age is not an element.  Therefore, Congress's decision not to explicitly eliminate the knowledge requirement in § 2244(b) is of no import.  It would have been redundant to do so because it was already clear from the language of the statute itself, together with its relatively light penal consequence, that the

---

[2] The district court sentenced Price to probation for three years.

government need not prove knowledge as to the second element.[3]

Furthermore, Price's logic would produce absurd results in interpreting § 2244 as a whole. Subsection 2244(c) provides that, "If the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section." That the only mens rea requirement in § 2244(a) and (b) is the defendant's knowing engagement in sexual contact is only bolstered by § 2244(c)'s omission of any explicit provision that the defendant need not know the person was under the age of twelve. Price's argument would read into subsection (c) a requirement that the government prove that the defendant knew that the child was under twelve to sustain a conviction under § 2244(c). Congress could not have intended to impose that extra mens rea requirement on sexual contact with a child under § 2244(c), with less severe penalties, when it chose not to impose that requirement on sexual abuse of a child under § 2241(c) and § 2243(a), with penalties as severe as life in prison.

---

[3] Price points to an Eighth Circuit opinion that relied on this comparison with § 2241(c) and § 2243(a) to hold that 18 U.S.C. § 2242(2), which addresses sexual abuse of an incapacitated person, requires that the defendant knew the victim was incapacitated or unable to grant consent. *United States v. Bruguier*, 735 F.3d 754, 761 (8th Cir. 2013) (en banc). We are not persuaded by Price's argument because § 2242(2) also has a severe maximum penalty of life imprisonment, unlike § 2244(b), and the Eighth Circuit did not cite § 2244(b) at all. Thus, we do not think the Eighth Circuit's interpretation of § 2242(2) affects our analysis of § 2244(b) here.

## C.

"Although we need not rely on legislative history because the statute is unambiguous, the legislative history of the statute and common sense support" our conclusion. *Castagana*, 604 F.3d at 1164. Congress's stated purpose in enacting the Sexual Abuse Act of 1986 was to "modernize[] and reform[] Federal rape provisions by . . . defining the offenses so that the focus of a trial is upon the conduct of the defendant" and "expanding the offenses to reach all forms of sexual abuse of another," among other changes. H.R. Rep. No. 99-594, at 10–11 (1986). The House Report also communicated Congress's expectation that the law would "simplify law enforcement" activities. *Id.* at 21. It would be inconsistent with these goals to hold that Congress intended to require proof that the defendant subjectively knew the victim did not consent.

In enacting the 1986 Act, Congress was concerned with whether lack of consent needed to be an element at all, and it consistently described this element in objective terms. *See, e.g.*, *id.* at 13 ("Where the Committee believes it appropriate to the offense to require the prosecution to show that the conduct was engaged in without the victim's permission, such a requirement has explicitly been set forth."). Congress would not have singled out § 2244(b) for an onerous burden of proof without comment given that its goal was to facilitate prosecutions. *See id.* at 12 (explaining that the 1986 Act was "drafted broadly to cover the widest possible variety of sexual abuse"); *cf. Lo*, 447 F.3d at 1231 (9th Cir. 2006) ("[I]t seems very unlikely that Congress would have chosen to make prosecution more difficult by requiring proof that the defendant knew that the chemical was a listed chemical, while at the same time seeking to expand the scope of prosecution for the possession and

distribution of precursor chemicals by increasing the number of chemicals that could provide the basis for prosecution.").[4]

## III.

Price also argues that all of his statements and the evidence seized from him when he was escorted from the plane and handcuffed by LAXPD Officers Christopher Faytol and Ngan Lee, and at least one U.S. Customs and Border Protection officer, should be suppressed.  He contends that the officers lacked probable cause to arrest him at the arrival gate.  The district court concluded that because the officers did not arrest Price at that time, there was no need to demonstrate probable cause.  While we disagree with the district court as to whether an arrest occurred, we conclude that the officers had probable cause to arrest Price as he disembarked from the plane.  Therefore, the district court did not err by denying Price's suppression motion.

We review de novo the denial of a motion to suppress, although we review underlying factual findings for clear error.  *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003).  "The determination of probable cause to arrest a suspect is a mixed question of law and fact reviewed de novo."  *United States v. Nava*, 363 F.3d 942, 944 (9th Cir. 2004) (citation omitted).

---

[4] We agree with Judge Gilman's conclusion that even if the statute required the government to prove that Price subjectively knew the sexual contact was without permission, any error in the jury instruction was harmless. *See United States v. Pierre*, 254 F.3d 872, 877 (9th Cir. 2001). Given the totality of the circumstances, it was clear beyond a reasonable doubt that Price subjectively knew that he did not have permission to have sexual contact with A.M.

In the context of an international border, an arrest occurs when "a reasonable person would believe that he is being subjected to more than the temporary detention occasioned by border crossing formalities." *United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir. 2002) (internal quotation marks and citation omitted). We ask, considering the totality of the circumstances, "whether a reasonable innocent person in such circumstances would conclude that *after brief questioning he or she would not be free to leave*." *Id.* (internal quotation marks and citation omitted). "[H]andcuffing is a substantial factor in determining whether an individual has been arrested"—although it "alone is not determinative." *Id.* at 1010; *see also United States v. Guzman-Padilla*, 573 F.3d 865, 884 (9th Cir. 2009) ("[O]fficers with a particularized basis to believe that a situation may pose safety risks may handcuff or point a gun at an individual without converting an investigative detention into an arrest.").

Price was escorted by three armed law enforcement officers off the plane at a remote gate, while the rest of the passengers remained seated. Officer Faytol performed a pat-down search and Officer Lee handcuffed him. This was not a routine border airport screening and search process, as the district court found. Although the officers cited safety justifications for handcuffing Price, including the fear that Price might become aggressive as other passengers deplaned, the officers kept Price in handcuffs until the FBI interviewed him—from the time Price deplaned at approximately 9:08 AM, until after S.A. Gates arrived at around 11:30 AM. This was not a "temporary detention occasioned by border crossing formalities"; this was an arrest. *Bravo*, 295 F.3d at 1009 (citation omitted).

We nevertheless conclude that the officers had probable cause to believe Price had committed a crime when they arrested him. Police may arrest a suspect if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004) (internal alteration marks and citation omitted). We must "consider the nature and trustworthiness of the evidence of criminal conduct available to the police." *Id.* at 1064. The police need not know, however, precisely what offense has been committed. *See United States v. Chatman*, 573 F.2d 565, 567 (9th Cir. 1977) (per curiam) (finding probable cause where officers believed only that the defendant was "clandestinely engaging in illegal business of some kind").

Here, the officers had "reasonably trustworthy information" to arrest Price as he deplaned. *Beier*, 354 F.3d at 1064. They knew that a female passenger had reported that Price had perpetrated a sexual offense. The pilot had sent an advance message asking LAXPD to meet the airplane, stating "WE HAVE A MOLESTER/FONDLER ON BOARD." The actions of the flight crew demonstrated that they viewed the allegations as credible as they sought law enforcement assistance.

We reject Price's argument that the officers lacked probable cause because the information available to the officers was not trustworthy. We acknowledge the minor differences in the officers' recollections of the event at the suppression hearing—Faytol recalled that the incident was a "290," the code for sexual battery, while Lee recalled that the incident was a "311," the code for indecent exposure. However, these differences did not render the information

untrustworthy.  Price also points to S.A. Gates's testimony that mid-flight reports can be unreliable because they involve a series of messengers.  Although we disagree that mid-flight reports are categorically so untrustworthy that they can never establish probable cause, we need not address these concerns here because before arresting Price, the officers spoke directly with the purser, lead flight attendant Zidan, who reported that a female passenger had complained about a male passenger touching her and gave details about where both individuals were sitting on the plane.  Based on purser Zidan's report, "a prudent person would have concluded that there was a fair probability that the defendant had committed a crime."  *Id.* at 1065 (internal alteration marks and citation omitted).

## IV.

Price also moved to suppress the statements he made to S.A. Gates when he was interviewed, contending that he did not adequately understand his rights when he waived them. He points to the transcript of the interview where he expressed confusion as to whether he was being arrested. We agree with the district court, however, that though Price may have been confused about whether he was under arrest, there was no doubt that his *Miranda* waiver was knowing, intelligent, and voluntary, and that his statements were voluntarily made.  "We review a district court's ruling on a *Miranda* waiver under two standards: Whether the waiver was knowing and intelligent is a question of fact that we review for clear error. Whether the waiver was voluntary is a mixed question of fact and law, which we review de novo." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir.) (citation omitted), *amended by* 416 F.3d 939 (9th Cir. 2005).  "We review de novo the voluntariness of a confession and the factual findings supporting the

determination for clear error." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009) (citation omitted).

Before S.A. Gates interviewed Price, he removed the handcuffs. S.A. Gates then explained to Price his *Miranda* rights, describing it as "just like you see on T.V." Price first sought clarification that he was not arrested, which S.A. Gates confirmed, and S.A. Gates then recited the *Miranda* rights, as Price read along and responded "Mm-hmm" at various points. At the end, Price asked once again whether or not he was under arrest, noting that in movies, when you hear *Miranda* rights, "you know that somebody is being arrested." S.A. Gates again assured Price that he was not under arrest. Price signed the "Advice of Rights" form. At the end of the interview, S.A. Gates cited Price with simple assault and allowed him to leave.

"To admit an inculpatory statement made by a defendant during custodial interrogation, the defendant's waiver of *Miranda* rights must be voluntary, knowing, and intelligent." *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008) (internal quotation marks and citation omitted). In determining the knowing and intelligent nature of the waiver, we consider the totality of the circumstances, including

> (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system.

*United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (citation omitted).

Price disputes only the fourth factor—whether he understood his rights. Price argues that his questions to S.A. Gates showed that he did not understand that he could exercise his *Miranda* rights. However, Price's questions were all directed towards clarifying whether or not he was actually under arrest. As the district court found, Price "was not confused as to the nature and extent of his rights" but rather "was confused about why ('the reason') he was being read his rights given that SA Gates had told him only moments earlier that he was not under arrest."

We must also find that both Price's waiver and the statements themselves were voluntary. A *Miranda* "waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc) (citation omitted). We find the confession voluntary unless, "considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Heller*, 551 F.3d at 1112 (citation omitted).

We agree with the district court that both Price's waiver and his statements were voluntary. Price mischaracterizes the record of the interview. S.A. Gates never threatened Price with his power to detain him unless he answered S.A. Gates's questions. It is evident from the record that S.A. Gates stated in a jocular manner that he could find a reason to arrest Price if Price wanted—a joke that elicited Price's laughter—and S.A. Gates explained that it was his expectation that Price would "walk out of here" that day.

The interview does not reveal any sign of coercion: Price was not in handcuffs or otherwise physically restrained, and the FBI agents asked Price if he was doing okay and if he needed water or to use the bathroom.

## V.

The district court did not abuse its discretion by declining to read back A.M.'s testimony when requested by the jury. We review denials of a jury's request to read back a witness's testimony for abuse of discretion and have noted "the district court's great latitude to address requests for readbacks." *United States v. Medina Casteneda*, 511 F.3d 1246, 1249 (9th Cir. 2008). "In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial." *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir. 1983) (citation omitted). During deliberations, the jury asked for a transcript of Price's FBI interview and of A.M.'s testimony. We reject Price's argument that because the district court acquiesced to the jury's request by replaying the recording of Price's FBI interview, the simultaneous decision not to read back A.M.'s testimony was improper.

Here, the district court gave two appropriate reasons for denying the readback. First, it cited the logistical difficulties in preparing a readback, and second, it expressed concern that reading back A.M.'s testimony without also reading back Price's testimony would lead to an unfair focus on one part of the trial over others. We have determined that the district court's rationale is appropriate as a basis for declining a readback of testimony. *See, e.g.*, *Medina Casteneda*, 511 F.3d at 1249 (finding no abuse of discretion in the district court's denial of the jury's request for a readback because of the concern that the jury would focus

on "one particular piece of evidence at the expense of other evidence").

## VI.

In enacting the Sexual Abuse Act of 1986, of which 18 U.S.C. § 2244(b) is a part, Congress sought to expand criminal culpability for sexual acts and contacts and facilitate prosecution of those crimes. Thus it placed the burden on the actor who knowingly engages in sexual contact with another person to *first* obtain that person's consent, objectively given. The government need not prove that the defendant subjectively knew he lacked consent, as Price asserted here. It need only prove that the victim did not consent as an objective matter. Because Price's remaining contentions also lack merit, we **AFFIRM** his conviction and sentence.

---

GILMAN, Circuit Judge, concurring:

I concur in the lead opinion's conclusion that Juan Pablo Price's conviction should be affirmed. But I respectfully disagree with its holding that the term "knowingly" in 18 U.S.C. § 2244(b) modifies only the phrase "engages in sexual contact with another person" and does not extend to the phrase "without that other person's permission." That holding is contrary to the plain text of the provision and its place in the overall statutory scheme.

In order to obtain a conviction under 18 U.S.C. § 2244(b), I believe that the government has the burden of proving that Price subjectively knew that he was acting without A.M.'s permission. The statute, in other words, does not criminalize otherwise innocent sexual contact based on

a fact—the lack of permission—unknown to the defendant. That the defendant knew he lacked permission may be proved by circumstantial evidence but, nevertheless, the defendant's subjective knowledge is an issue to be resolved by the jury.

Accordingly, the district court erred in refusing to instruct the jury that such knowledge was necessary to convict Price under 18 U.S.C. § 2244(b). Despite the court's faulty instructions, however, the error was harmless beyond a reasonable doubt because no reasonable juror could have concluded that Price subjectively believed that he had permission to touch a sleeping stranger's breast. I therefore concur in the ultimate judgment reached by the lead opinion.

## Introductory Note

Prior to his death in March 2018, Judge Stephen Reinhardt was a member of this panel and prepared a draft opinion holding that the "knowingly" mens rea requirement contained in 18 U.S.C. § 2244(b) should be applied to each element of the offense, including that the sexual contact be without the other person's permission. Unabashedly, much of this concurrence can be attributed to the portions of Judge Reinhardt's draft opinion with which I fully agree.

## I.

This case requires us to interpret the following statute:

> Whoever, in the special maritime and territorial jurisdiction of the United States, . . . *knowingly* engages in sexual contact with another person *without that other person's permission* shall be fined under this title, imprisoned not more than two years, or both.

18 U.S.C. § 2244(b) (emphases added).  For the following reasons, I disagree with the lead opinion's conclusion that a conviction under § 2244(b) does not require the government to prove that the defendant knew that he lacked permission to engage in sexual contact with the other person.

## A.

In *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), the Supreme Court interpreted a statute that provided for increased criminal penalties for certain offenses if the offender "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."  *Id.* at 648.  The Court held that, "[i]n ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed *the entire action*, including the object as set forth in the sentence."  *Id.* at 650 (emphasis added). Moreover, "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."  *Id.* at 652; *see also id.* at 660 (Alito, J., concurring) ("I think it is fair to begin with a general presumption that the specified *mens rea* applies to all the elements of an offense . . . .").

The statute that we are asked to interpret, just like the one in *Flores-Figueroa*, lists all of the elements of the offense in a single phrase that begins with the word "knowingly."  *Flores-Figueroa* therefore requires us to presume that the word "knowingly" dictates how the defendant must have "performed the entire action"—that is, that he knew that he was engaging in sexual contact *and* that he knew he was doing so without the other person's permission.  *See id.* at 650 (majority opinion).  Sexual

contact with permission and sexual contact without permission are legally worlds apart.

This key principle from *Flores-Figueroa* has been recently reiterated by the Supreme Court in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). In *Rehaif*, the Court reviewed prosecutions under 18 U.S.C. § 922(g) and § 924(a)(2). It held that the government must prove both that a defendant "knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. I believe that the lead opinion misses *Rehaif*'s central point that, in determining congressional intent, courts "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). That presumption is directly applicable to this case.

The Eighth Circuit reached a similar conclusion in interpreting a related statute in *United States v. Bruguier*, 735 F.3d 754 (8th Cir. 2013) (en banc). That statute, 18 U.S.C. § 2242(2), applies to anyone who, in certain extended federal jurisdictions, "knowingly—. . . engages in a sexual act with another person if that other person is— (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating willingness to engage in, that sexual act." Pursuant to *Flores-Figueroa*, the Eighth Circuit held that "there is a presumption that 'knowingly' in section 2242(2) applies to the circumstances following the conjunction 'if.'" *Id.* at 758.

The case for applying the *Flores-Figueroa* presumption, as reiterated in *Rehaif*, to § 2244(b) is even stronger than it

is for applying that presumption to § 2242(2). In *Bruguier*, the dissent identified three aspects of the text of § 2242(2) that, it argued, counseled against applying the *Flores-Figueroa* presumption:    (1) "[t]he requirement of 'knowingly' is . . . set apart by two sets of interruptive punctuation" from the element at issue, (2) the relevant elements in § 2242(2) are contained in a "conditional 'if' clause," and (3) the relevant elements in § 2242(2) are contained in "separate subsections describing the victim's condition."   *Bruguier*, 735 F.3d at 775–77 (Murphy, J., concurring in part and dissenting in part).   None of those facts are true of § 2244(b).    If the *Flores-Figueroa* presumption applies to § 2242(2), then it certainly applies to the much simpler and more straightforward phrase defining the offense in § 2244(b).

The lead opinion disagrees, contending that *Flores-Figueroa* is inapposite for two reasons.   First, the lead opinion argues that *Flores-Figueroa* does not apply to § 2244(b) because "the phrase in question—'without that other person's permission'—is not the object of the sentence but an adverbial prepositional phrase."   Lead Op. 16.   Even assuming that the lead opinion's grammatical analysis is correct, the conclusion reached does not logically follow.

*Flores-Figueroa* did not turn on whether the element modified the verb or the object, nor did it transform us into "a panel of grammarians."   *Flora v. United States*, 362 U.S. 145, 150 (1960).   Rather, it recognized a broadly applicable principle—i.e., that "knowingly" typically tells us how the defendant "performed the entire action."   *Flores-Figueroa*, 556 U.S. at 650.   The lead opinion attempts to distinguish *Rehaif* from the present case based on the differing grammatical structures of the relevant statutes.   *See* Lead Op. 17.   Nowhere, however, does it explain why the hyper-

technical grammatical distinctions are significant enough to justify departing from the ordinary presumption that scienter should apply to every element of the offense in question.

Second, the lead opinion argues that, "in *Flores-Figueroa*, the mens rea requirement was necessary to 'separate wrongful conduct from otherwise innocent conduct,'" whereas § 2244(b) without a mens rea requirement for its lack of permission element would not penalize innocent conduct. Lead Op. 16. The lead opinion also makes a similar argument with respect to *Rehaif*. Lead Op. 17–18. But the lead opinion fails to explain why § 2244(b) would not in fact penalize innocent conduct if the government need not prove that the defendant subjectively knew that he lacked permission to engage in sexual contact with the other person.

The inclusion of *some* mens rea requirement is not necessarily enough to ensure that "a broad range of apparently innocent conduct" is not swept into a criminal prohibition. *Liparota v. United States*, 471 U.S. 419, 426 (1985). If a mens rea requirement is interpreted to require knowledge of only innocent facts, then a person could be convicted despite genuinely believing that his acts were entirely proper. *Staples v. United States*, 511 U.S. 600, 612, 618–19 (1994).

Knowingly engaging in sexual contact is, of course, not illegal. Innocent people do it all the time. The element in § 2244(b) requiring that the sexual contact be "without [the] other person's permission" is the actual linchpin of the offense. Therefore, if § 2244(b) requires a guilty mind, then the mens rea requirement must apply to the lack-of-permission element. The requirement that the defendant knew that he was engaging in sexual contact per se does nothing to separate innocent from criminal behavior.

Nor does the requirement that the government prove that the sexual contact was *objectively* without the other person's permission obviate the need for a second mens rea requirement. *See* Lead Op. 14–15. Again, the element requiring that the sexual contact be "without [the] other person's permission" is what makes the sexual contact illegal under the statute. This means that "the presumption in favor of a scienter requirement should apply" to the permission element of § 2244(b) because that is the element "criminaliz[ing] otherwise innocent conduct." *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72–73 (1994) (holding that because "the age of the performers is the crucial element separating legal innocence from wrongful conduct" under a child-pornography statute, the statute requires that the defendant have knowledge of the performer's age).

I acknowledge that the lead opinion cites cases in which this court has held that *Flores-Figueroa*'s reading of "knowingly" does not compel the same reading in every criminal statute that uses the word "knowingly." Lead Op. 15–16. Although the lead opinion is correct in stating that "the inquiry into a sentence's meaning is a contextual one," *Flores-Figueroa*, 556 U.S. at 652, the cases it cites are distinguishable from the present case.

In *United States v. Jefferson*, 791 F.3d 1013, 1016–18 (9th Cir. 2015), for example, this court determined that *Flores-Figueroa* did not apply because the text of the statute before it, 21 U.S.C. § 960(a), was not parallel to the statute at issue in *Flores-Figueroa*. The *Jefferson* court held that the "knowingly" mens rea requirement did not apply to an element that was contained in a different sentence—indeed, in an *entirely separate subsection*. *Id.* at 1015; *see also United States v. Stone*, 706 F.3d 1145, 1147 (9th Cir. 2013)

(holding that 18 U.S.C. § 924(a)(2)'s mens rea requirement for possessing ammunition did not apply to 18 U.S.C. § 922(g)'s requirement that the ammunition travel in interstate commerce); *United States v. Castagana*, 604 F.3d 1160, 1166 (9th Cir. 2010) (declining to apply *Flores-Figueroa* to 18 U.S.C. § 1038(a)(1), but addressing a specific mens rea requirement that formed its own self-contained phrase). Accordingly, the cases cited by the lead opinion do not concern statutes that resemble the statute here, where the word "knowingly" is at the beginning of a phrase defining all the elements of the offense.

The lead opinion also cites *United States v. Backman*, 817 F.3d 662 (9th Cir. 2016), which dealt with a sex-trafficking statute requiring proof that the "[d]efendant 'knowingly—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person.'" *Id.* at 666–67 (quoting 18 U.S.C. § 1591(a)). This court held that the government need not prove, in addition to proving knowing recruitment, that the defendant knew that his acts affected interstate or foreign commerce. It reasoned that "[t]he phrase 'in or affecting interstate or foreign commerce' describes the nature or extent of those actions but, grammatically, does not tie to 'knowingly.'" *Id.* at 667.

*Backman*, however, is no more persuasive on the issue before us than is *Jefferson*, *Stone*, or *Castagna*. The *Backman* court addressed a jurisdictional element, an element that turns what would otherwise be a state crime into a federal crime because of its nexus to some aspect of federal jurisdiction. *Id.* That decision rested in large part on "[t]he longstanding presumption . . . that the jurisdictional element of a criminal statute has no mens rea," and thus has no

relevance to our analysis in this case of a substantive, rather than jurisdictional, element. *Id.* The structure of the sentence at issue in *Backman* is also markedly different from the one before us. That statute's jurisdictional element ("in or affecting interstate or foreign commerce") comes between "knowingly" and the verbs that they both modify, and the element is set off from both by a dash and a comma. Section 2244(b)'s structure is very different: even if "without that other person's permission" were read to modify "engages," it follows the verb and is not set off in any way.

In sum, I find the lead opinion unpersuasive in arguing that the most natural grammatical reading of § 2244(b) does not require the government to prove that the defendant subjectively knew that he lacked permission to engage in sexual contact. The text, in tandem with Supreme Court precedent, strongly suggests otherwise.

### B.

In addition to its text, § 2244(b)'s statutory scheme strongly indicates that the "knowingly" mens rea requirement applies to the lack-of-permission element of the crime. Section 2244 was adopted as part of the Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87(b), 100 Stat. 3592, 3620–23. Several other provisions were also adopted as part of this same Act, including § 2242 (the statute at issue in *Bruguier*), § 2241, and § 2243. Each of these sections addresses forms of sexual assault within certain extended federal jurisdictions.

Most important to our analysis in this case are § 2241(c) and § 2243(a), which deal with sexual acts that are criminal due to the other person's age. Section 2241(c) applies to anyone who, in certain extended federal jurisdictions, "knowingly engages in a sexual act with another person who

has not attained the age of 12 years," while § 2243(a) applies to anyone who, in certain extended federal jurisdictions, "knowingly engages in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging."

As the Eighth Circuit explained in exhaustive detail when comparing § 2242(2) to § 2241(c) and § 2243(a), the structure of the three provisions is very similar: each bars knowingly engaging in a sexual act when certain circumstances are also present. Section 2244(b), the statute in question here, follows the same structure as the other three sections, although it addresses sexual contact rather than sexual acts. *See United States v. Bruguier*, 735 F.3d 754, 759 (8th Cir. 2013) (en banc) (charting the parallel structure of §§ 2241(c), 2242(2), and 2243(a)). Section 2244(a)(1)–(5) provides for criminal penalties for "knowingly engag[ing] in or caus[ing] sexual contact with or by another person" when doing so would violate various provisions of §§ 2241–43 "had the sexual contact been a sexual act," further confirming the close relationship between § 2244 and the other three sections. "The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Comm'r v. Lundy*, 516 U.S. 235, 250 (1996) (internal quotation marks omitted).

Sections 2241 and 2243, the two sections addressing sexual contact with minors, include provisions that expressly limit their mens rea requirements. Section 2241(d) provides that "the Government need not prove that the defendant knew that the other person engaging in the sexual act had not

attained the age of 12 years," while § 2243(d) states that "the Government need not prove that the defendant knew—(1) the age of the other person engaging in the sexual act; or (2) that the requisite age difference existed between the persons so engaging."  Neither § 2242(2) nor § 2244(b) contains an analogous provision relieving the government of its burden to prove that the defendant knew of the circumstances that make the sexual contact a crime—in § 2242(2), the other person's incapacity; in § 2244(b), the lack of permission.

Commenting on the lack of any provision analogous to § 2241(d) and § 2243(d) in § 2242(2), the Eighth Circuit invoked the "general rule of statutory construction that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Bruguier*, 735 F.3d at 759–60 (quoting *Rodriguez v. United States*, 480 U.S. 522, 525 (1987)).  Thus, the court explained, "reading section 2242(2) in the broader context of the Act, and applying *Rodriguez*'s presumption that 'disparate inclusion or exclusion' of statutory language is intentional, . . . reinforces the conclusion that 'knowingly' in section 2242(2) applies to the victim-incapacity element of the offense."  *Id.* at 760.  The court went on to say:

> Moreover, interpreting the knowledge requirement in section 2242(2) to extend only to knowledge of the sexual act would raise interpretive concerns with sections 2241 and 2243. . . . If section 2242(2)'s knowledge requirement were construed to apply only to knowledge of the sexual act, then this same construction logically should apply to the knowledge requirement in sections 2241(c)

and 2243(a). Doing so, however, would render superfluous sections 2241(d) and 2243(d), both of which explicitly narrow the respective statutes' knowledge requirements. This would run afoul of "the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute."

*Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)).

I agree with the Eighth Circuit's analysis, which applies equally to § 2244(b). The overall structure of these interrelated statutes reflects Congress's understanding that, unless expressly limited, the "knowingly" mens rea requirements would apply to all the elements of the offense and not to only the sexual act itself, or else Congress would not have included limits on the mens rea requirement in § 2241(d) and § 2243(d). This understanding is apparent not only from the text, but is also expressly stated in the legislative history. In explaining why § 2241(d) was included in the statute, for example, the House Report states that "[a]bsent this provision, the government would have had to prove that the defendant knew that a victim was less than 12 years old, since the state of mind required for the conduct—knowing—is also required for the circumstance of the victim's age." H.R. Rep. No. 99-594, at 15 n.59 (1986).

"It is inconceivable that Congress meant to create a strict liability crime *by omission* in one section of a statute when Congress affirmatively created strict liability crimes *by inclusion* in [two other] sections of the same statute." *Bruguier*, 735 F.3d at 766–67 (Riley, C.J., concurring) (emphases in original); *see also* H.R. Rep. No. 99-594, at 15–18 (discussing and justifying the inclusion of the

strict-liability age elements); *id.* at 19 (discussing § 2244(b) with no reference to any strict-liability element). Taken together, therefore, the *Flores-Figueroa* presumption and the statutory context clearly establish that the government must prove that the defendant knew that the sexual contact was without the other person's permission in order to obtain a conviction under 18 U.S.C. § 2244(b).

The lead opinion's only response to the comparison among § 2244(b), § 2241(c), and § 2243(a) is that § 2241 and § 2243 impose more severe penalties than § 2244 and, therefore, § 2241 and § 2243 require an explicit statement that the government need not prove that the defendant knew the age of the victim in order to overcome the strong presumption of such a mens rea requirement. Section 2244(b), the lead opinion argues, does not give rise to the same strong presumption because of its less severe penalties. Lead Op. 21–23. The lead opinion also distinguished the Eighth Circuit's decision in *Bruguier* on those grounds because § 2242(2), the statute at issue in *Bruguier*, "has a severe maximum penalty of life imprisonment, unlike § 2244(b)." Lead Op. 23 n.3.

Finally, the lead opinion suggests that the presumption that "some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime," *Staples v. United States*, 511 U.S. 600, 606 (1994), applies only when the penalty is severe. *Staples*, however, did not hold that the presumption applies only to crimes with high penalties. *See id.* at 617–18. If that were the rule, then courts would have to determine what constitutes a "high penalty" versus a "low penalty" in all these types of cases.

I find dubious the lead opinion's contention that Congress would have intended to dispense with the

"knowingly" mens rea requirement in § 2244(b)'s permission element simply because that statute originally carried a maximum prison sentence of six months (now two years). *See* Lead Op. 21–23. Surely most of us, if we were charged with a criminal offense, would consider a sentence of six months—let alone two years—to be a very significant penalty. This is especially true for an offense such as § 2244(b) where, according to the lead opinion, there is no mens rea required for the element of the offense that turns otherwise legal conduct into a crime.

In addition, as the Supreme Court made clear in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the cases where the Court has previously "declined to apply the presumption in favor of scienter" typically involve "statutory provisions that form part of a 'regulatory' or 'public welfare' program *and* carry only minor penalties." *Id.* at 2197 (emphasis added). Like the firearms provisions at issue in *Rehaif*, § 2244(b) is "not part of a regulatory or public welfare program," *id.*, and the lead opinion does not argue that it is. This fact, too, helps explain why any "exception to the presumption in favor of scienter does not apply" in this case. *Id.*

The lead opinion also attempts to use the difference in penalties to suggest that requiring the government to prove that a defendant knew that he lacked permission to engage in sexual contact under § 2244(b) would produce an absurd result. Lead Op. 23. It notes that § 2244(c), which provides that "[i]f the sexual contact that violates this section . . . is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section," does not contain any explicit provision disposing of a mens rea requirement regarding the victim's age. The lead opinion therefore argues that, under my reading of the

statute, the government must prove that the defendant knew that the child was under 12 years old in order to obtain a § 2244(c) conviction. Because § 2244(c) has less severe penalties than § 2241(c) and § 2243(a), and because the latter two statutes explicitly eliminate a mens rea requirement regarding the victim's age, the lead opinion argues that Congress could not have intended to impose the extra mens rea requirement on defendants charged with violations of the less serious penalties under § 2244(c). Lead Op. 23.

But the less severe penalties of § 2244(c) are explainable regardless of its mens rea requirement. This is because § 2244 criminalizes certain sexual *contact*, whereas § 2241 and § 2243 criminalize certain sexual *acts*. "Sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person." 18 U.S.C. § 2246(3). A "sexual act," in contrast, is significantly more intrusive, encompassing:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass,

degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

*Id.* § 2246(2). The difference in penalties between § 2244(c), § 2241(c), and § 2243(a) is therefore warranted, and requiring the government to prove the defendant's knowledge of the victim's age for a conviction under § 2244(c) but not under the other two statutes would not produce an absurd result.

Finally, the lead opinion compares § 2244(a) and § 2244(b) in an attempt to demonstrate that the statutory scheme supports its conclusion. Both § 2244(a) and § 2244(b) require that the defendant "knowingly" have "sexual contact" plus one additional element. In § 2244(a), the additional element that the government must prove is that the sexual contact would be punishable by another delineated statute if the sexual contact had instead been a sexual act; in § 2244(b)—the statute under which Price was convicted—the additional element is a lack of permission. The lead opinion argues that because the government is not required to prove that the defendant knew that the second element of § 2244(a)—that the sexual contact he engaged in would have been punished by another law if the contact was a sexual act—was met, the government is also not required to prove that the defendant knew that the second element of § 2244(b)—a lack of permission—was met. Lead Op. 19–21.

But that argument overlooks the longstanding distinction between knowledge of the underlying criminal law and knowledge of the facts that constitute the offense. Courts almost never interpret criminal statutes to require knowledge of applicable criminal law. *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). On the other hand, as highlighted several times throughout this concurring opinion, courts presumptively *do* interpret criminal statutes to require knowledge of the facts that constitute the offense. *See, e.g.*, *Staples v. United States*, 511 U.S. 600, 618–19 (1994) ("[W]here . . . dispensing with mens rea would require the defendant to have knowledge only of traditionally lawful conduct, . . . the usual presumption that a defendant must know the facts that make his conduct illegal should apply."). I therefore find the lead opinion's comparison of § 2244(a) and § 2244(b) unpersuasive, and conclude that the statutory scheme at hand requires that the "knowingly" mens rea requirement of § 2244(b) be applied to the lack-of-permission element of the crime.

## C.

In further support of its argument, the lead opinion highlights two statements from the House Report on the Sexual Abuse Act of 1986 bill. First, the lead opinion says that Congress expected that the Act would "'simplify law enforcement' activities." Lead Op. 24 (quoting H.R. Rep. No. 99-594, at 21 (1986)). But that statement has been taken out of context. The House Report does not indicate that Congress sought to achieve the goal of "simplifying law enforcement activities" by eliminating mens rea requirements from certain subsections of the statute.

Instead, the Report says that the Act  "may simplify law enforcement activities" by "provid[ing] much more specific definitions of federal sexual abuse offenses . . . [and] mak[ing] conforming amendments to a number of other statutes that currently refer to rape."  H.R. Rep. No. 99-594, at 21.  The Report says nothing about the mens rea issue in question here.

The second statement from the House Report that the lead opinion relies on provides that "[w]here the Committee believes it appropriate to the offense to require the prosecution to show that the conduct was engaged in without the victim's permission, such a requirement has explicitly been set forth."  Lead Op. 24 (quoting H.R. Rep. No. 99-594, at 13).  But that statement says nothing about *the defendant's knowledge* "that the conduct was engaged in without the victim's permission."  *See* H.R. Rep. No. 99-594, at 13.  And only two paragraphs later, the Report explains that proposed § 2243(d) "sets forth a proof requirement concerning the defendant's state of mind [because t]he Committee does not . . . believe a corroboration requirement is justified and has, therefore, intentionally not imposed such a requirement."  *Id.* at 14.  The Report, in contrast, says nothing about "a proof requirement concerning the defendant's state of mind" for § 2244(b).  In fact, nothing in the hearings or reports on the Act suggests that any of the participants in its passage had any intention of making 18 U.S.C. § 2244(b) a strict-liability offense.

Other parts of the legislative history actively undermine the lead opinion's interpretation of the statute.  The House Report, for example, explains that "[the Sexual Abuse Act of 1986 was] drafted employing the format, conventions and techniques used in drafting the Criminal Code Revision Act of 1980."  *Id.* at 13 (citing H.R. Rep. No. 96-1396 (1980)).

One such convention was that, "[t]he state of mind required for conduct will apply to circumstances and results unless otherwise specified. This rule makes it unnecessary to distinguish among the components of an offense (conduct, circumstances and results) in order to determine the applicable state of mind." H.R. Rep. No. 96-1396, at 34. The lead opinion's argument that "knowingly" applies only to the element of sexual contact, but not to the element of lack of permission, is contrary to this understanding that mens rea would apply equally to every element of the offense.

Rather than confronting the stark difference between the provisions adopted as part of the same Act, the lead opinion instead attributes a broad intention to Congress's goal of modernizing sexual assault laws "by focusing on the defendant's conduct" rather than the victim's state of mind. Lead Op. 6. But the goal of focusing on the defendant's conduct rather than the victim's state of mind does not support the lead opinion's position. Price asks us to hold that the government must prove that he knew he was engaging in sexual contact without A.M.'s permission. Reading the statute to include that requirement advances the goal that the government attributes to Congress: it focuses on the defendant's conduct rather than the victim's state of mind. Requiring the government to prove something about *Price*'s state of mind at the time of his offensive conduct does nothing to implicate the *victim*'s state of mind.

As a final thought on this issue, I address the lead opinion's contention that "[i]f the government were required to prove that the defendant subjectively knew he lacked consent, as Price urges here, every accused sexual predator could defend his admitted sexual contact in the face of no objective sign of permission by asserting a supposed

subjective belief that the victim was 'enjoying herself.'" Lead Op. 6.  The government made a similar statement at oral argument, contending that a knowledge requirement would allow defendants to avoid conviction under this statute simply by "get[ting] up on the stand and say[ing], 'Oh, I didn't know.'"  But the defendant's subjective knowledge is and always has been an extremely common requirement in criminal statutes, one that the government is almost always required to prove.  It typically does this by circumstantial evidence and by asking the jury to reject what the government views as self-serving and incredible claims of innocence.  The criminal system has hardly ground to a halt as a result.

In sum, under the interpretive rule recognized in *Flores-Figueroa*, the plain text of 18 U.S.C. § 2244(b) applies the "knowingly" requirement to each element of the offense, including that the sexual contact be without the other person's permission.  That interpretation is not rebutted by any special context; in fact, the context of the Sexual Abuse Act of 1986 strongly reaffirms the conclusion that "knowingly" applies to every element.  I would therefore hold that the "knowingly" requirement applies to the element of the sexual contact being without the other person's permission.  Section 2244(b)'s language and the context provided by the other related provisions compel this result. The legislative history and the weighty presumption against strict-liability offenses further support my conclusion.

## II.

Despite my disagreement with the lead opinion's analysis of 18 U.S.C. § 2244(b), I join its ultimate conclusion for a totally different reason—that the district court's error in relieving the government of its need to prove that Price subjectively knew he lacked A.M.'s permission to

engage in sexual contact with her was harmless. "An error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Pierre*, 254 F.3d 872, 877 (9th Cir. 2001) (internal quotation marks and brackets omitted). In the district court's instructions to the jury, it defined "permission" as "[t]he act of permitting, a license or liberty to do something, or authorization," explaining that permission can be express or implied, and explaining that implied permission "means permission that is inferred from words or actions."

Price conceded that A.M. never gave him *explicit* permission to touch her breasts or vagina. The only remaining question is whether there is any reasonable possibility that the jury could have found that Price subjectively believed he had A.M.'s *implicit* permission to engage in sexual contact with her. In light of the strong circumstantial evidence showing that Price had to have known that A.M. had not consented to his advances, the answer is no.

By convicting Price, the jury determined that he in fact lacked both explicit and implicit permission to touch A.M.'s breasts and vagina. The jury therefore believed A.M.'s story of what occurred on the flight over Price's story. And according to that story, A.M. was asleep when Price began running his hand up and down her side and her leg. A sleeping person clearly gives no implicit permission to be touched. A.M. then moved her cell phone, thinking that Price might have been trying to steal it, and fell back asleep. She woke up once again when he began touching her breast. In response, A.M. put a blanket over her shoulder and crossed her arms in front of her.

These actions, if anything, negate any implicit permission to be touched.  Yet Price continued to touch A.M.'s breast and then moved his hand down to her legs, first over her jeans and finally inside of them, touching her vagina.  In a state of shock, panic, and fear, and in a final effort to ward off Price, she turned her body away from him and towards her friend Fujita.  Despite A.M.'s negative reaction to Price's advances, she testified that he "tried to move my body towards" him "[w]ith strong force" and tried to pull her jeans down.  A.M., moreover, never spoke to Price while he was touching her nor even looked at him during their encounter.  Under all of these circumstances, no reasonable juror could have found that Price subjectively believed that he had permission to touch A.M., especially once A.M. physically turned her back to him and towards her friend.

Price's statements after the incident further support a finding that he knew he lacked permission to touch A.M.  He said that he "knew . . . it was wrong" to be "engaging like this with somebody who is totally a stranger" without first having had a "proper conversation."  Price also agreed with Special Agent Gates, the FBI agent who interviewed Price, that, at his age, he should have known that it was his "job not to touch" A.M. without her permission.  And finally, when the customs officers searched Price's bags, they found a note that read:  "If a man touches you and you don't want him to always feel free to say no."  Price said that he wrote the note to A.M. after she got up and left her seat, indicating that he knew A.M. had not given him permission to touch her.

I would therefore hold that the error in the district court's jury instructions was harmless because "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *See United States v.*

*Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009) (internal quotation marks omitted). The government's evidence, which the jury had to believe in order to find Price guilty, overwhelmingly demonstrated that Price knew that he lacked permission to engage in sexual contact with A.M. *See United States v. Cherer*, 513 F.3d 1150, 1155 (9th Cir. 2008) (holding that an erroneous jury instruction regarding mens rea was harmless when "the government's evidence overwhelmingly show[ed] that [the defendant] believed [the victim] was fourteen years old").

For all of the foregoing reasons, I concur with the lead opinion's conclusion that Price's conviction should be affirmed.

WARDLAW, Circuit Judge, with whom NGUYEN, Circuit Judge, joins, concurring in the denial of rehearing en banc:

Contrary to Judge Collins's suggestion, this is not a case in which "bad facts make bad law." This is a case that upholds a model jury instruction that has been routinely given by district courts in our circuit for decades.[1] It is ironic that Judge Collins accuses our opinion of redrafting the statute when in fact he is the one who wishes to rewrite 18 U.S.C. § 2244(b)—and the Ninth Circuit's model instruction—by inserting an additional "knowingly." Judge

---

[1] The only other circuit to have promulgated a model instruction for 18 U.S.C. § 2244(b), the Seventh Circuit, also does not require the government to prove beyond a reasonable doubt both that the defendant "knowingly engaged in sexual contact" and that he subjectively knew the victim did not consent. Pattern Criminal Jury Instructions of the Seventh Circuit at 626 (2019); Pattern Criminal Jury Instructions of the Seventh Circuit at 300 (1998).

Collins's judicially created statute would require that the government prove beyond a reasonable doubt that not only did the defendant knowingly engage in sexual contact, but that he subjectively knew that he lacked permission to do so—an almost impossible burden in this context.   The dissent rigidly applies general presumptions of statutory construction without regard to the grammatical structure of the specific statute, its place in the statutory scheme, or the Congressional purpose behind its enactment.   The dissent's proposed subjective knowledge mens rea requirement is at odds with the very purposes of the Sexual Abuse Act of 1986 and would create a shield for sexual predators that Congress did not intend to create.   And these policy views are Congress's, not our own, enacted into this provision of the Violence Against Women Act.   Even worse, the dissent would reverse a conviction for sexual assault that is supported by overwhelming evidence, including admissions by the defendant.

As a majority of active judges recognized, this case is not one worthy of en banc review.

## I.

Interpreting 18 U.S.C. § 2244(b) to require proof of a defendant's subjective knowledge that the victim did not consent is fundamentally inconsistent with Congress's purpose in enacting the Sexual Abuse Act of 1986, which includes § 2244(b).  The Sexual Abuse Act was passed to modernize the federal criminal law of sexual assault and rape.  *See* H.R. Rep. No. 99-594, at 6 (1986).  Among other things, the Act "defin[ed] the offenses so that the focus of a trial is upon the conduct of the defendant, instead of upon the conduct or state of mind of the victim, . . . expand[ed] the offenses to reach all forms of sexual abuse of another," and "abandon[ed] the doctrines of resistance and spousal

immunity." *Id.* at 10–11.  In other words, the Sexual Abuse Act expanded the scope of federal criminal law covering rape and sexual assault while eliminating antiquated barriers that burdened victims and the prosecution of such crimes. Congress did not intend to cabin the Act's provisions to a narrow category of offenders or allow regressive beliefs about consent to serve as a defense to prosecution.

The law, and the jury instruction, strike the right balance. The instruction given by the district court, Ninth Circuit Model Criminal Jury Instruction § 8.180, sensibly does not require explicit verbal permission or an affirmative, "Yes," for each step of a sexual encounter.  Rather, the jury was instructed that permission could be either express or implied. Express permission is "clearly and unmistakably granted by actions or words, oral or written."  Implied permission, by contrast, need not be clear or unmistakable, but "is inferred from words or actions."  The instruction, as it exists, provides a defense for misunderstandings about consent, when those misunderstandings can be reasonably and objectively inferred from words or actions.  The statute and instruction simply require that the misunderstanding have some reasonable, objective basis; the misunderstanding cannot exist only in the mind of the defendant.

The alternative reading urged by the dissent discards any connection to the objective reality of any given situation.  In so doing, this reading resurrects barriers to prosecution that the Sexual Abuse Act was intended to remove.[2] Counterintuitively, under the dissent's subjective reading,

---

[2] Contrary to the dissent's assertions, we do not reject the plain language of the statute, rather we simply disagree with the dissent's creation of an alternative § 2244(b) that would subvert the plain language and Congressional intent.  Dissent at 74–75.

still too-common regressive beliefs about sexual interaction would become defenses. The simple acts of being friendly and having a brief conversation with another person—as was the case here between A.M. and Price—are instead transformed into free passes to grope another without consequence based on an objectively unreasonable claim of misunderstanding. Common beliefs such as, "She was asking for it," or "I expected him to say no if he didn't want to go any further," would insulate defendants from liability even when there is no reasonable basis to believe consent was given. A misogynist who believed that all women must always want him, no matter their verbal protestations or body language, could apparently never commit this crime.

The plain language of the statute does not demand such a narrow result. The Act "abandon[ed] the doctrine[] of resistance" that previously required a victim of rape to physically resist to demonstrate her non-consent. H.R. Rep. No. 99-594, at 11. Yet, under the dissent's interpretation, even the undisputed fact of resistance is insufficient for culpability under § 2244(b). The prosecution would be required to further show, beyond a reasonable doubt, that the defendant subjectively knew that the resistance meant rejection, rather than "token" resistance or an attempt at "playing hard to get." No longer would objective resistance or explicit rejection be enough; instead, a victim would be required to resist to the extent necessary to make an unreasonable offender *subjectively understand* that consent was lacking. But a victim has no way of knowing, and should not be required to meet, the subjective expectations of a sexual predator.

In the same vein, the Sexual Abuse Act eliminated the exemption for marital rape. H.R. Rep. No. 99-594, at 11. Yet under the dissent's surprising reasoning, this exemption

is in fact preserved in the law: so long as a spouse has the subjective belief that marriage constitutes continuous consent to sexual contact, that spouse could commit no crime under § 2244(b).

These outcomes turn the statute on its head and provide inexplicable defenses for those who are in the best position to ascertain the consent of the victim. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 n.5 (1994). It "makes sense to impose the risk of error" on the person sexually touching another. *Id.* In purporting to *expand* the scope of sexual assault offenses, Congress could not possibly have intended to require a victim to convey her rejection beyond any objectively reasonable standard to meet an idiosyncratic defendant's more demanding subjective expectations. The text of the statute does not require this backward result.[3]

## II.

The dissent argues that because the definition of "sexual contact" in 18 U.S.C. § 2246(3) includes the term "intentional," we must read § 2246(3) as introducing an additional mens rea requirement into § 2244(b), creating surplusage between "knowingly" and "engages in intentional touching." Rather than seeing this drafting oversight for what it is, the dissent then relies on that supposed surplusage, together with the cannon against surplusage, to conclude that "knowingly" must instead

---

[3] Contrary to the dissent's view and even setting aside its misleading characterization—we never describe the plain language of the statute as a "'drafting oversight' in need of a judicial fix" —we are not creating a "new version of § 2244(b)." Dissent at 74–75. Rather, we are simply interpreting and "apply[ing] the statute as it is written." *Burrage v. United States*, 571 U.S. 204, 218 (2014).

modify only the second element of the offense, "without that other person's permission." *See* 18 U.S.C. § 2244(b). Applying the dissent's reasoning to the surrounding subsections of § 2244 demonstrate its illogic: doing so does not eliminate surplusage at all, but instead it only recreates that surplusage in the other parallel subsections. Moreover, the canon against surplusage is "not an absolute rule" but rather "assists only where a competing interpretation gives effect to every clause and word of a statute." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011)). The canon has little to say where, as here, "no interpretation . . . gives effect to every word," *id.*, and even less so when applying the canon also results in a reading fundamentally contrary to the statutory purpose.[4]

We do not read statutes "in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" *Abramski v. United States*, 573 U.S. 169, 179 (2014) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)). The provisions of § 2244 were enacted together, so it makes sense not to narrowly focus on "a single sentence or member of a sentence," but instead to "look to the provisions of the whole law." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).

---

[4] Had Congress clearly intended "knowingly" to modify "without that other person's permission," it could have easily drafted the statute in any number of ways to accomplish that purpose, such as "engages in sexual contact with another person knowing he lacks that other person's permission," "engages in sexual contact with another person with knowledge that he lacks the other person's permission," or even "knowingly engages in non-consensual sexual contact with another person," but Congress did not do so.

The abusive sexual contact statute, 18 U.S.C. § 2244, criminalizes sexual contact in three ways, and each subsection has two elements: a defendant "knowingly" engaged in "sexual contact,"[5] plus an additional element. Subsection 2244(a) provides punishment for one who "knowingly engages in or causes sexual contact with or by another person, if so to do would violate" one of a set of cross-referenced subsections prohibiting certain more serious offenses defined as "sexual acts."[6]   18 U.S.C. § 2244(a).   Subsection (b), at issue here, criminalizes "knowingly engag[ing] in sexual contact with another person without that other person's permission."   *Id.* § 2244(b).   Finally, subsection (c) doubles the maximum term of imprisonment for § 2244 offenses if the sexual contact "is with an individual who has not attained the age of 12 years." *Id.* § 2244(c).   Using the dissent's reasoning creates mischief with this straightforward statutory structure. It is no wonder that at this point in its analysis the dissent castigates discussion of the issues as "irrelevant" and prefers the reader ignore the problems created by its interpretation. Dissent at 89.

Start with § 2244(a).   The sensible reading of § 2244(a) is that Congress meant to replace the term "sexual act" where it appears in the statutes cross-referenced by § 2244(a) with the less serious act of "sexual contact," thus criminalizing conduct, such as sexual abuse of a minor or by force,

---

[5] The term "sexual contact" is defined as "intentional" touching, i.e. groping.  18 U.S.C. § 2246(3).

[6] The graver crimes described as "sexual act[s]", are defined in 18 U.S.C. § 2246(2) as the groping of a minor under 16, penetration, or contact between genitalia and the mouth.   The cross-referenced subsections include aggravated sexual abuse, *id.* § 2241, sexual abuse, *id.* § 2242, and sexual abuse of a minor, *id.* § 2243.

18 U.S.C. §§ 2241, 2243, that involved mere "sexual contact" not rising to the level of a sexual act.[7] Following the dissent's reasoning simply recreates the surplusage the dissent sees in § 2244(b) in these cross-referenced sections with differing degrees of serious conduct.[8] For example, § 2244(a)(5) cross-references 18 U.S.C. § 2241(c), aggravated sexual abuse with children. Where § 2241(c) prohibits "sexual acts" with children, § 2244(a)(5) prohibits "sexual contact" with children. Using the definition of sexual contact as "intentional touching" from § 2246(3) in 18 U.S.C. § 2241(c), as the dissent would have us do, creates a statute that punishes one who "knowingly engages in

---

[7] "[S]exual act" is defined in four subparts (A) through (D), only one of which includes an "intentional touching" definition and two which do not include "intent" in any form. 18 U.S.C. § 2246(2)(A)–(D). It is curious to suggest that those differing definitions trigger different statutory modes of analysis, and possibly differing mens rea requirements altogether, based on which *type* of sexual touching occurred.

[8] The dissent's citation to *Hammond v. Gordon County*, 316 F. Supp. 2d 1262, 1289 (N.D. Ga. 2002), in response is perplexing. Dissent at 92–92. There is no mention of 18 U.S.C. § 2244 whatsoever in that case, and the dissent merely hypothesizes that its interpretation of § 2244(a) is correct because it *could* apply to the facts of that case. *Id*. More telling is what the dissent left out, *i.e.* that in fact no court has ever held that the "added words in § 2244(a) . . . *apply to separate people*." *Id*. Even if § 2244(a) could be so construed, the dissent's hypothesis fails to explain why Congress drafted "knowingly" to modify both "engages in" and "causes" when it could have simply written "engages in or knowingly causes." And for "knowingly" to have "work to do in § 2244(a)" in scenarios where a prison guard causes inmates to have sexual contact with one another, Dissent at 91, the prison guard's guilt would hinge on the *inmate*'s "intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). Congress could not have intended such an absurd result.

[intentional touching] with another person who has not attained the age of 12 years."

Applying the dissent's view of the canon against surplusage, "knowingly" cannot modify "intentional touching" because "knowingly" would be surplusage of "intentional," just as in § 2244(b).   Under the dissent's reasoning, "knowingly" must therefore modify the further element "who has not attained the age of 12 years."  But this reading cannot be correct, because in a prosecution under § 2241(c), Congress has expressly provided that "the Government need *not* prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years."  18 U.S.C. § 2241(d) (emphasis added). Therefore, consistent with express congressional intent, we must read "knowingly" to modify only "engages in [intentional touching]" in §§ 2244(a)(5) and 2241(a).  Yet this is the exact same reading that, according to the dissent, creates surplusage: "*knowingly* engages in *intentional* touching."

The same pattern repeats with § 2244(a)(3).  That section prohibits sexual abuse of a minor under § 2243(a) when the abuse is by "sexual contact" rather than the more serious "sexual act."   Substituting "sexual contact" in the statute makes the statute punish one who "knowingly engages in [sexual contact] with another person who" is a minor. 18 U.S.C.  §§ 2243(a),  2244(a)(3).    Reading into the subsection "intentional touching" for sexual contact, as the dissent would, thus creates a statute that applies to one who "knowingly engages in [intentional touching]" of a minor. The  dissent's  reasoning  would  logically  then  read "knowingly" to apply to the age of the victim to avoid the dissent's newly created surplusage between "knowingly" and "intentional."  *See* 18 U.S.C. § 2243(a)(1)–(2).  But this,

too, cannot be correct: Congress again expressly provided that the government need not prove knowledge of the age of the minor victim. *Id.* § 2243(d). We are left with a statute that contains the surplusage of one who "*knowingly* engages in *intentional* touching."

This attempt to "avoid surplusage" also interferes with the straightforward application of § 2244(c), which doubles the penalties for § 2244(a) and (b) by adding the element "with an individual who has not attained the age of 12 years" after "another person." 18 U.S.C. § 2244(c). Applying the dissent's logic, the mens rea of "knowingly" would apply to the age element of § 2244(c).[9] Yet Congress has expressly exempted a knowingly mens rea from similar but far more serious crimes involving children: aggravated sexual abuse of a minor, 18 U.S.C. § 2241(c), (d), and sexual abuse of a minor, 18 U.S.C. § 2243(a), (d). The idea that Congress intended to eliminate the mens rea requirement of "knowingly" for the victim's age in the most serious of offenses but require it for the less serious crimes set forth in § 2244(c) is absurd. *See United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001) (explaining that, for 18 U.S.C. § 2423(a), "knowingly" in the phrase "knowingly transports

---

[9] That § 2244(c) is set off in a different subsection does not render it irrelevant. Subsection 2244(c) does not articulate a stand-alone crime, but one that applies to "sexual contact that violates this section." Every other reference to sexual contact in § 2244 contains a "knowingly" mens rea as to at least one element, and § 2244 doubles the maximum sentence for those offenses. This age element thus becomes an additional element of those other offenses. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that facts that enhance a defendant's maximum sentence are elements that must be submitted to the jury). If, as the dissent argues, the canon against surplusage suggests that "knowingly" does not apply to "sexual contact" but instead to other elements of the offense, that reasoning suggests that it applies to this age element as well given its incorporation of the remainder of § 2244.

an individual who has not attained the age of 18 years in interstate or foreign commerce" does not apply to additional elements beyond "transports an individual").

The dissent's proposed path to avoid surplusage does not avoid surplusage at all, but simply recreates it in different elements of the prohibited offenses.  This is not the purpose of the canon, *Marx*, 568 U.S. at 385, and there is no reason to selectively read some parts of the statute to avoid surplusage to remedy what surely must have been an oversight in drafting the parallel provisions.  The result is also grammatically awkward, at best.  As a matter of ordinary grammar, "knowingly" should most obviously modify the words Congress placed it immediately next to, "engages in sexual contact."  But the dissent insists that "knowingly" instead jumps over those words to modify the second element of the offense described in disconnected words.  Had Congress intended "knowingly" to modify only "without that other person's permission," it could have easily drafted the statute to say so: "engages in sexual contact with another person knowing he does not have that person's consent."  That it did not draft the offense in this manner is additional evidence that Congress did not draft § 2244 with the precise language of § 2246 in mind.

Applying the canon against surplusage in the manner the dissent suggests places "knowingly" in § 2244(b) where Congress did not, as the district court recognized, and creates surplusage that the canon cannot eliminate because of express Congressional dictate in §§ 2241(d) and 2243(d).  It is far more logical, and straightforward, to read each subsection of § 2244 to require that a person "knowingly" engage in "sexual contact," plus an additional element, as expressly written by Congress, not created by the dissent's awkward reading of the statute.

III.

As to the implications of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and the principles it applies, three points warrant discussion.  First, *Rehaif* did not resolve a circuit split or change governing law; it simply reiterated the presumption of scienter, citing the explanation of that presumption in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), and *X-Citement Video*, among other cases. 139 S. Ct. at 2195–96.  *Rehaif* explained its analysis as grounded on "presumption[s]" that "normally" apply; it did not transform those presumptions into ironclad rules, never to be broken.  139 S. Ct. at 2196; *see also Flores-Figueroa*, 556 U.S. at 652.

Of course, *Rehaif* "changed" something in that it overturned our prior cases interpreting the mens rea requirements of § 922(g).  But *Rehaif* did so by looking to the straightforward grammatical structure of 18 U.S.C. §§ 922(g) and 924(a)(2), not by altering principles of statutory construction.  We had never conducted the straightforward textual analysis of § 922(g) that the Court did in *Rehaif*.  In *United States v. Miller*, we rejected the idea that "knowledge" applies to the status element of § 922(g) with summary reasoning, relying on the history of previous versions of the firearms prohibitions.  105 F.3d 552, 555 (9th Cir. 1997).  We reaffirmed that holding in *United States v. Stone* because our prior reasoning was not "irreconcilable" with *Flores-Figueroa*.  706 F.3d 1145, 1146–47 (9th Cir. 2013).  And in both cases, we focused primarily on the interstate commerce element rather than the status element.

Second, *Rehaif* did not change the canon that "[courts] normally read the statutory term '"knowingly" as applying to all the subsequently listed elements of the crime'" from a presumption to an inflexible rule.  *Rehaif*, 139 S. Ct. at 2196

(quoting *Flores-Figueroa*, 556 U.S. at 650). "[T]he inquiry into a sentence's meaning is a contextual one." *Flores-Figueroa*, 556 U.S. at 652; *see Rehaif*, 139 S. Ct. at 2195–96 (analyzing sentence structure). The dissent mischaracterizes both the presumption's origins and its applications by portraying it as an ironclad rule subject only to narrow exceptions. Multiple reasons counsel against its strict application here.

Section 2244(b) was first enacted as a petty offense punishable by only six months' imprisonment. Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87, 100 Stat. 3592, 3622; H.R. Rep. 99-594 at 19 nn. 75–76. The maximum penalty was increased without comment twenty years later—but only from six months to two years. Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1177(b)(2), 119 Stat. 2960, 3125 (2006). Such petty offenses do not trigger the same presumption of scienter. *See Rehaif*, 139 S. Ct. at 2197; *Staples v. United States*, 511 U.S. 600, 606–07 (1994). Even the revised punishment is still only one-fifth of the "potentially harsh penalty" with which the Supreme Court has previously expressed concern. *Staples*, 511 U.S. at 616; *see also Rehaif*, 139 S. Ct. at 2197 (citing *X-Citement Video*, 513 U.S. at 72). And people do in fact "harbor settled expectations" that touching the genitalia of another person is "subject to stringent public regulation," further weighing against the presumption.[10]   *X-Citement Video*, 513 U.S.

---

[10] Of course, this presumption was established "at least with regard to crimes having their origin in the common law." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978). But at common law, rape and sexual abuse had *no* scienter requirement; the intentional act was enough. *See* 2 W. LaFave, *Substantive Criminal Law* § 17.2(b) (3d ed. 2017) (noting that "most American courts have omitted mens rea altogether" for rape and that "there exists no issue in the prosecution of the crime of

at 71.  Section 2244(b) has been on the books since 1986, and our circuit has consistently promulgated a jury instruction requiring an objective inquiry into permission. *See, e.g.,* Ninth Circuit Model Criminal Jury Instruction § 8.149 (2000); Ninth Circuit Model Criminal Jury Instruction § 8.38B (1995); *see also* Pattern Criminal Jury Instructions of the Seventh Circuit at 626 (2019); Pattern Criminal Jury Instructions of the Seventh Circuit at 300 (1998).  There is no indication that by modestly increasing the maximum possible punishment without comment after twenty years, Congress silently intended to redefine a key element of the crime.

The text of § 2244(b) also creates uncertainty as to how far "knowingly" extends as an adverb preceding the verb. *Rehaif*, 139 S. Ct. at 2196.  In the statute, the phrase "without that other person's permission" is an adverbial prepositional phrase that follows "knowingly engages in sexual contact with another person."   Our circuit has consistently and repeatedly interpreted sentences containing similar prepositional phrases as *not* clearly modified by adverbs that precede the verb.  *See United States v. Backman*, 817 F.3d 662, 667 (9th Cir. 2016) ("[I]t is most natural to read the adverb 'knowingly' . . . to modify the verbs that follow," while the additional prepositional phrase "describes the nature or extent of those actions but, grammatically, does not tie to 'knowingly.'");[11]    *United States v. Castagana*,

---

rape regarding defendant's perception of the requisite attendant circumstances (e.g., whether or not the [alleged victim] had given consent)").

[11] The dissent appears to dismiss *Backman* as contrary to *Rehaif*, Dissent at 97, but *Backman* in fact points to *both* the language of the statute and "[t]he longstanding presumption . . . that the jurisdictional

604 F.3d 1160, 1163 (9th Cir. 2010) (explaining that "with intent" did not apply to an additional prepositional phrase based on the language of the statute and its legislative history); *United States v. Lo*, 447 F.3d 1212, 1229 (9th Cir. 2006) (explaining the ambiguity as to whether "knowingly" applied to both "possesses or distributes" and "listed chemical" or only the former); *Taylor*, 239 F.3d at 997 (explaining "knowingly" in the phrase "knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce" does not apply to the additional elements beyond "transports an individual"); *United States v. Flores-Garcia*, 198 F.3d 1119, 1121 (9th Cir. 2000) ("[I]t is unclear to what elements beyond 'aids or assists,' if any, the defendant's mental state extends.").

The Supreme Court made exactly this point in *Liparota v. United States*, 471 U.S. 419 (1985). Examining a sentence structure similar to § 2244(b), the Supreme Court explained that "the words themselves provide little guidance" because "[e]ither interpretation would accord with ordinary usage." *Id.* at 424. And while the Supreme Court ultimately found a heightened mens rea appropriate in that case, it did not do so because the grammar of the statute required it. Rather, a heightened mens rea was appropriate because there was no "indication of contrary purpose in the language or legislative history of the statute," and to hold otherwise "would be to criminalize a broad range of apparently innocent conduct." *Id.* at 425–26. Here there is ample reason—from the legislative history, the nature of sexual assault crimes, the statute's text, and common sense—to conclude that § 2244(b) does not impose a heightened mens rea requirement on the permission element. *See, e.g.*, *United*

---

element of a criminal statute has no mens rea" in reaching its holding. *Backman*, 817 F.3d at 667.

*States v. Crowder*, 656 F.3d 870, 875 (9th Cir. 2011) (Ikuta, J.) (holding that the scienter element in 18 U.S.C. § 2250(a)(3) of "knowingly" applies only to "fails to register or update a registration" in "fails to register or update a registration as required by the Sex Offender Registration and Notification Act ('SORNA')," and does not require the government to prove that the defendant knew about the registration requirement based on the nature of the crimes, the statute's text, and common sense).[12]

Third, as to innocent conduct, Part I explained how the subjective knowledge requirement would protect a great deal of conduct that is decidedly not innocent. Groping in the wake of affirmative rejection with the objectively unreasonable belief that "no means yes" is not "innocent" conduct. Nor is unreasonably interpreting polite conversation as an invitation for sexual activity. This type of unreasonable but intentional sexual contact is a far cry from the innocent conduct *Rehaif* discussed, such as blamelessly stumbling over another person by mistake. 139 S. Ct. at 2197 (quoting O. Holmes, *The Common Law* 3 (1881)). Indeed, "requiring the government to prove knowledge of the [defendant's subjective beliefs] would likely make it more difficult for the government to prosecute . . . sex offenders who knowingly [initiate sexual contact with objectively unreasonable beliefs], and thus potentially undermine Congress's goal of [expanding the scope of

---

[12] We wholly agree with the dissent that *Crowder* relied on "the more natural reading of the statutory text" by declining to read "knowingly" into a subsequent adverbial phrase. Dissent at 98 n.8. We do the same here, which is why a majority of active judges appropriately did not vote to rehear this case en banc. Further, by failing to point to any legislative history in support of its idiosyncratic interpretation, the dissent fails to reconcile *Crowder's* view about Congressional intent with its own approach here. 656 F.3d at 876.

federal criminal law covering rape while eliminating antiquated barriers to such prosecutions].” *Crowder*, 656 F.3d at 876. In *Crowder*, as here, “no indicium of Congressional intent weighs against the more natural reading of the statute.” *Id.*

Applying “knowingly” to § 2244(b)’s additional element of “without that other person’s permission” is also unnecessary to “separate wrongful from innocent acts.” *Rehaif*, 139 S. Ct. at 2197; *see Liparota*, 471 U.S. at 426–27. Crucially, the intentional touching at issue is not of any kind upon another person, but of “the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.” 18 U.S.C. § 2246(3). It may be perfectly innocent for a person to possess a firearm with no additional context, a legal act that does not implicates any other person’s interests. *Rehaif*, 139 S. Ct. at 2197 (citing *Staples*, 511 U.S. at 611). But it would *not* be innocent for a person to walk up to another and, with no additional context, touch the intimate parts of that person’s body with sexual intent. Unlike possession of a firearm, “one would hardly be surprised to learn that [sexual battery] is not an innocent act.” *Staples*, 511 U.S. at 610 (quoting *United States v. Freed*, 401 U.S. 601, 609 (1971)).

The addition of the element of lack of consent beyond a reasonable doubt makes the act more wrongful. But an action is not “innocent” simply because it could have been even more wrongful than it was. *See United States v. Jefferson*, 791 F.3d 1013, 1018 (9th Cir. 2015) (finding “no potential for the penalization of innocent conduct” where “the government must prove that the defendant knew he was importing some amount of a controlled substance”); *Flores-Garcia*, 198 F.3d at 1121–22 (explaining it is enough that

"the defendant recognizes he is doing something culpable"); *cf. X-Citement Video*, 513 U.S. at 72 n.3 ("Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful.").

Unlike the possession of a firearm, sexual contact with another person implicates the deeply personal interests of that other person. Even Price admitted at trial that he was "not innocent of doing something socially improper." The statutory text, history, and purpose all weigh against the presumption of scienter here.

IV.

The dissent's analysis of the opinions' harmless error holding is also flawed. Judge Gilman's concurrence does not improperly weigh Price's credibility and nowhere makes such a claim. The dissent's discussion of *Neder v. United States*, 527 U.S. 1 (1999), is thus not a criticism of any holding in the opinion but of one invented by the dissent. Judge Gilman's concurrence concludes that the *jury* necessarily rejected Price's story in finding him guilty beyond a reasonable doubt. The record undeniably supports this conclusion. In Instruction No. 13, the jury was told that permission "can be express or implied." "Express permission means permission that is clearly and unmistakably granted by actions or words, oral or written. Implied permission means permission that is inferred from words or actions." The jury nonetheless convicted Price, finding that permission could not have been inferred from A.M.'s actions beyond a reasonable doubt.

This finding makes clear that the jury rejected Price's story. Price testified to an escalating chain of events resting

on implicit consent for his actions.  Price testified: "I was rubbing her hand, and she started rubbing my hand back with her fingers, with her thumb.  And then I rubbed some more around her hand, went around her hand, and then we . . . held hands as we rubbed each other's hand." He was not "mistaken" because "it was clear to [him] that she was rubbing [his] hand" for three or five minutes.  Price next testified that he started "rubbing her arm and massage [sic] her arm for a while, for a few minutes."  Price continued: "And then I – I felt that – I saw that she – I noticed that – the way she moved her body."  His lawyer then asked him: "When you say she moved her body *when you touched her arm* . . . try to describe it as best you can."  He described the movements up her arm, to her torso, to her breasts, as "very softly, very gently, very gradually," because "[t]hat's how I see she liked it."

Price later noted that his conduct was "not a normal thing to do in a public place for sure," and agreed that it was "a really big deal" that "you'd really want some certainty about."  In two notes he wrote following the incident, he further revealed that he subjectively knew he did not have permission.  While still in flight, he wrote a note to A.M.: "If a man touches you and you don't want him to always feel free to say no."  He wrote this note after A.M. left her seat, but before the flight crew approached him about A.M.'s complaint, indicating he knew he had not been given permission.  And Price lied in a handwritten statement he gave to the flight purser, omitting his intentional groping of A.M.'s breast and vagina.  Finally, Price told the FBI he knew "it was wrong" to engage with A.M. without a "proper conversation," and that it was his "job not to touch her" without permission.

The entire theory of Price's defense was that A.M. gave implicit permission through her physical responses. He later admitted he knew he had not received such permission. In convicting Price, the jury found that implicit permission had not been given and rejected his story to the contrary. His subjective belief was premised on his own version of events; without his version of events, there is no evidence to support his assertion on appeal that he subjectively believed he had consent.

V.

The majority opinion upholds a model instruction that has routinely been given in this Circuit for decades. It gives effect to § 2244(b)'s purpose and follows the rules of statutory interpretation and the canons of construction that guide our analysis. The majority opinion simply rejects that, in light of the text, surrounding statutory provisions, and purpose, this particular provision must be read to protect one-sided, subjective beliefs about a sexual encounter. Section 2244(b) does not require more, and a majority of active judges appropriately did not vote to rehear this case en banc.

---

COLLINS, Circuit Judge, with whom IKUTA and VANDYKE, Circuit Judges, join as to Parts I and II, and with whom BUMATAY, Circuit Judge, joins as to Part II(B)(1), dissenting from the denial of rehearing en banc:

This case calls to mind the adage that "bad facts make bad law." The trial record makes clear, in my view, that Defendant Juan Price violated 18 U.S.C. § 2244(b) by repeatedly groping a young woman on an international flight without her consent. In the words of the statute, he

"knowingly engage[d] in sexual contact with another person without that other person's permission."     18 U.S.C. § 2244(b).  The problem is that the jury instructions left out one of the required elements of the offense, namely, that Price *knew* that he lacked the victim's permission to engage in sexual contact.  In nonetheless affirming the conviction, the panel majority rests on two alternative grounds, both of which involve serious legal error.  I respectfully dissent from our failure to take this case en banc.

First, the panel majority erroneously holds that there was no missing element at all, because § 2244(b) does not require the Government to prove that the defendant knew that the sexual contact was without permission.  According to the majority, the word "knowingly" applies *only* to the immediately following seven words ("engages in sexual contact with another person") and *not* to the remainder of the phrase ("without that other person's permission").  In his separate opinion, Judge Gilman persuasively explains why the majority's statutory analysis is incorrect, but if anything, he understates the case against the majority's wholly unwarranted elimination of a scienter element from a criminal statute.  The majority's reading cannot possibly be correct, because it limits the application of "knowingly" to a phrase ("engages in sexual contact with another person") that *already* imposes a *higher* scienter requirement than "knowingly."  *See* 18 U.S.C. § 2246(3) (defining "sexual contact" to mean a specified form of "intentional touching" done "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any other person").  By thus reading the word "knowingly" out of § 2244(b), the panel majority's flawed construction ignores the plain language of the statute and disregards no fewer than three applicable canons of construction—including two that were recently and unambiguously reaffirmed by the Supreme

Court in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Tellingly, the panel majority in their concurrence in the denial of rehearing ("Denial Concur.") characterizes the plain language of § 2244(b) as a "drafting oversight" in need of a judicial fix. Denial Concur. at 58.[1]

As a review of the concurrence in denial of rehearing makes quite clear, the panel majority's rewriting of § 2244(b) is heavily influenced by the majority's strongly held policy views about what the Government should and should not be expected to prove in criminalizing the offense conduct at issue here. According to that concurrence, the textualist reading of § 2244(b) that Judge Gilman and I adopt "would create a shield for sexual predators" and allow "still too-common regressive beliefs about sexual interaction" to "become defenses." Denial Concur. at 55, 56. Although I suspect that these concerns are overstated (given that they presume that real juries would actually accept the sort of implausible defenses that the majority posits), I do not necessarily disagree with the majority that, from a policy point of view, the new version of § 2244(b) that my colleagues have drafted is better than the one Congress passed. But under our constitutional system, Congress writes the laws, not us, and we therefore are not free to disregard the plain language of those laws or the settled rules of statutory interpretation simply because we dislike the outcome. That is doubly true when, as here, we are

---

[1] The majority audaciously asserts that the plain-language construction adopted by Judge Gilman and me is actually the one that would "rewrite" § 2244(b) "by inserting an additional 'knowingly.'" *See* Denial Concur. at 54. But we have done no such thing. Instead, we simply have construed the reach of the word "knowingly" that *is* in the statute in accordance with the plain language of the provision and the controlling canons of construction as articulated by the Supreme Court. The panel majority does neither.

interpreting criminal statutes, and it remains true even when, as in this case, the defendant is charged with committing vile and despicable acts.

Second, the panel wrongly concludes that, in any event, the omission of the scienter element was harmless error. *See* Majority Opinion ("Opin.") at 25 n.4 (agreeing with Judge Gilman's panel concurrence on this point). But under the applicable standards for evaluating whether the failure to instruct the jury on an essential element of a criminal offense is harmless, courts must ask whether there is sufficient evidence in the record to have supported a defense verdict on the element in question. *See Neder v. United States*, 527 U.S. 1, 19 (1999). Like any other sufficiency inquiry, that analysis requires the court to *credit* the defendant's testimony concerning the missing element, no matter how incredible we judges may find it (and I, too, find Price's testimony to be incredible here). In suggesting that "no reasonable juror could have found that Price subjectively believed that he had permission to touch" the victim, *see* Concurring Opinion of Judge Gilman ("Gilman Concur.") at 53—*i.e.*, that no reasonable jury could have *believed* Price's testimony on this point—the panel departs from *Neder* and effectively directs a verdict against a criminal defendant, and does so under standards that are more permissive than those we are allowed to apply in *civil* cases. The result is a novel and serious intrusion on the Sixth Amendment right to a jury trial.

On this record, I have little doubt that Price is guilty of abusive sexual contact in violation of § 2244(b). But under well-settled law, we cannot affirm a criminal conviction, no matter how serious the underlying conduct, if the conviction is based on a crime that Congress did not write and on findings of guilt no jury ever made. Put simply, we are not

permitted to "[c]ut a great road through the law to get after the Devil." Robert Bolt, A Man for All Seasons, Act 1 (1960). I respectfully dissent from our refusal to rehear this case en banc.

## I

Because the underlying factual context is important to understanding the issues (particularly the harmless error issue), I set them forth in some detail.

## A

### 1

On September 21, 2014, A.M., a twenty-one-year-old Japanese student, flew overnight from Tokyo to Los Angeles aboard American Airlines Flight 170. A.M. was accompanied by her friend, Maki Fujita. The two were on their way to visit Los Angeles and Las Vegas. Juan Pablo Price, then forty-six, was also a passenger on the flight. Price was en route to the United States from Vietnam, where he had just spent six months teaching English. Neither A.M. nor Fujita had met Price prior to the flight.

A.M. was assigned to sit in seat 26G, an economy aisle seat in the middle segment of her three-segment row. There were five seats in the middle segment of A.M.'s row: facing the front of the plane, the section was bookended by seat 26C on the left aisle and seat 26G on the right aisle. Fujita's assigned seat was 26F, directly to A.M.'s left. The two seats to Fujita's left, 26E and 26D, were unoccupied. Another passenger sat in seat 26C on the left aisle.

At some point during the approximately ten-hour flight, A.M.'s video monitor stopped functioning. Wanting to

watch a movie, A.M. caught the attention of Hidemori Ejima, a nearby flight attendant. Ejima tried to restart the video monitor but was unsuccessful. As a result, and with Ejima's permission, A.M. and Fujita each moved one seat inward, towards the middle of their section, such that they each had a working monitor. A.M. was then seated in seat 26F and Fujita in 26E, leaving seat 26G unoccupied. Before changing her seat, A.M. had noticed Price staring at her from his window seat in 25J, which was positioned one row in front of A.M., diagonally across the aisle to her right. Despite thinking that Price was "creepy" and "looking at [her] too much," A.M. did not pay him much attention.

Sometime thereafter, Price got up to use the bathroom. The nearest bathroom was located near row 27, one row past A.M. and Fujita, such that Price had to pass them to reach it. On his way to the bathroom, Price noticed that seat 26G was unoccupied, and as he was later returning to his seat, he asked A.M. if he could sit in 26G. A.M. thought there was "nothing [she could] do about" Price sitting next to her, so she said "okay." She removed her handbag from the seat and Price collected his things from 25J and sat down in 26G.

About this time, Ejima noticed that Price had helped himself to seat 26G. Ejima approached Price and informed him that the video monitor for that seat was inoperable, but Price indicated that he wished to remain there. Price testified at trial that there was a small electric box below his originally assigned seat that constricted his leg room. The box was "several inches in diameter," and, being a "tall person," Price claimed that he would be more comfortable in a seat with more leg room. Ejima then offered Price seat 20D, a bulkhead seat that was a few rows closer to the front of the airplane, which had a working video monitor and three times as much legroom as 26G. Price declined. According to

Price, his refusal was partly due to his frequent need to use the bathroom, which stemmed from a medical condition. Seat 20D was located just seven rows from the bathroom, which Ejima estimated to be only about five meters away. Still, Price opted to remain in 26G.

Ejima was surprised that Price had turned down the opportunity to change seats from 26G to 20D because, in his twenty-five years as a flight attendant, Ejima had "never" seen a passenger turn down a seat with greater legroom. Puzzled, Ejima handed a note to Fujita, instructing them to alert Ejima if Price made them uncomfortable.

**2**

A.M. testified at trial that she and Price exchanged pleasantries after he sat down, but that Price eventually realized that she did not understand what he was saying in English. During their short conversation, Price asked A.M. about her drink, and she tried to explain to him that she was not drinking "regular wine." (It was a mixture of red wine and Coca-Cola.) A.M. was not sure that Price understood, but he proceeded to order more red wine, which he poured in A.M.'s cup. A.M. did not really want to drink the wine Price had given her, but since she did not want to waste it either, she went ahead and drank it. A.M. estimated that her brief exchange with Price lasted five minutes.

Shortly thereafter, Fujita informed A.M. that Ejima had warned them to "watch out [for] the person sitting next to" them. A.M. interpreted this as having something to do with safeguarding her valuables. She then went to sleep with her blanket covering her lap and the armrest between her and Price in the down position.

A.M. woke up to Price "touching" the "right side of [her] body, [her] arm and [her] right side" including her "right leg and right hip" and rear pants pocket. At that point, A.M. thought that Price was attempting to steal her iPhone, so she moved it into the seat pocket on the back of the seat in front of her and went back to sleep. A.M. was awakened yet again by Price—this time because he was fondling her breast. In that moment, A.M. reports that she "could not understand at all" what was going on and that she "didn't know what was happening" to her. She recalls being "so shocked" by Price's unsolicited sexual advance that she went into "a state of panic."

A.M. testified that she did not tell Price to stop because she "could not think straight" and, due to her panic, "could not remember" how to say "stop" in English. Instead, she responded by pulling up the blanket to her shoulders and crossing her arms to block his hands. A.M. next remembers that Price spread his blanket across the two of them to conceal his hands, and that he put his hand under her shirt and inside her jeans. Price then "put his hand under [her] underwear and [] started to touch [her] vagina." At this point A.M. was "completely in panic" and "could not calm down." She twisted her body toward Fujita on her left, away from Price. With "strong force," Price then attempted to yank her back towards him and pull down her jeans. At this point, Fujita woke up and became aware of the situation. Concerned, she asked if A.M. was alright. A.M. responded that she was "not okay." Seeing Fujita awake, Price settled back into his seat. A.M., pretending to go to the bathroom, went to the rear of the plane and found a female flight attendant whom she asked for help.

A.M. testified that at no point did she invite or consent—either expressly or impliedly—to being touched in any way

by Price. In fact, A.M. says she felt physically overpowered by Price, and that the encounter left her feeling "soiled," "dirty," and "embarrassed."

**3**

Price testified at the trial. As the panel majority notes, the "objective facts" were "fairly undisputed," *see* Opin. at 7, but Price's testimony nonetheless differed from A.M.'s in several respects. Price stated that A.M. was "smiling" when he took his seat in 26G and that she offered him some of her beverage (though this claim is disputed by A.M.). Price claimed that they joked about the poor in-flight service and talked briefly about where they were from. He testified that he thought that A.M. might be interested in having a "good time" with him. Price readily admitted that his conversation with A.M. was limited by the language barrier—A.M., fluent only in Japanese, had informed Price of her limited ability to speak English. Nonetheless, Price said that they finished her glass of wine together and that he subsequently ordered more wine for them to share. After sharing a second glass of wine with A.M., Price recalls falling asleep.

According to Price, he awoke to A.M. touching his hand under his blanket, which he interpreted as an "invitation to something." At trial, Price remembered the encounter this way:

> I first felt her hand touching mine. So I thought she was initiating something. And that's why I decided to find out if it was an accident or [if] she was trying to initiate something. . . .
>
> . . . .

> I started [touching her] first with my pinky very subtly, very gently. I started rubbing her hand, the top of her hand. And then I went around her hand, and then she started rubbing me back with her thumb. . . .
>
> . . . .
>
> After that we—we rubbed each other's hand, and we held hands. I started massaging her arm with my other hand. And so I was massaging her arm. At that point I was looking at her. I saw that she was—she was looking straight to the video screen.
>
> And so I—there was no doubt in my mind that she—she was liking it. She was rubbing my hand with her finger. I was rubbing her arm, and I moved up to her—the top part of her arm. And that's when I started feeling the side of her breast. That's how I—it was all slowly, gently, gradually. . . .
>
> . . . .
>
> [A]fter touching her breast, I went down with my arm to her torso, and I put my arm around her torso. And then that's—and then she put—she lifted her left arm and put it on top of my arm in a very gentle manner, like embracing my arm.

Price claimed that he then moved his hand down A.M.'s torso and eventually touched her vagina from the outside of her pants. He then reached inside her pants and put his hand

on her pubic area, though he stated that he could not unzip her pants because they were very "tight." Price surmised that A.M. was "enjoying herself" based on her body language—he testified that she was "arching her body," breathing intensely, and opening and closing her eyes.

Price recalls that, after he unsuccessfully tried to unzip her pants, A.M. got up and went to the bathroom. He testified that:

> [A.M.] came back and she sat down, and I put my arm on her arm again and started rubbing her hand again. And then at one point I thought I'd take a step farther and have a more direct—more of a—I wanted to embrace her, and I wanted to have an open— you know, I didn't want to—I didn't want to be a secret anymore basically.
>
> So I—so that's when I tried to embrace her and I tried to kiss her. And then that's when she turned away.

Price said that he felt "awkward" and "upset" when A.M. rebuffed his kiss. But at that point, he noticed that Fujita had woken up and that A.M. had turned her body away from him and toward Fujita. After A.M. whispered with Fujita, she got up and moved to the empty seat on the other side of Fujita. Price decided to write A.M. a note, which read: "If a man touches you and you don't want him to, always feel free to say no." After finishing the note, Price saw that A.M. was talking with Fujita and another passenger, and so, rather than give the note to A.M., he just placed it in his bag.

Price testified that he believed that A.M. was a consenting participant during the entire encounter.

**4**

When she arrived at the rear of the plane, A.M. had trouble describing the encounter to the female flight attendant due to her limited English.  However, Ejima, fluent in Japanese, was able to speak with her.  In Japanese, A.M. explained to Ejima that, while she was asleep, Price began touching her from her "breasts . . . down to [her] pants" and that "he put his hand inside her pants."

Yosri Zidan, the flight's purser, having been informed of an "issue between two passengers," joined A.M. in the rear of the plane.  A.M. described the incident to Zidan in Japanese while another crew member interpreted.  Zidan then had A.M. write a statement, which she wrote in Japanese.  Ejima ultimately moved A.M. and Fujita to seats 33C and 33D, towards the rear of the plane.

Zidan had Price brought to the back of the plane and then asked him to provide his version of the incident.  After interviewing Price, Zidan asked him to provide a written statement.  In that statement, which was written on the back of a piece of paper from a nearby catering cart, Price described the encounter as consensual.  Zidan then told Price that he was free to move about the aircraft so long as he did not go near A.M. and Fujita.

When the flight arrived at LAX, law enforcement officers were standing by.  Among those who arrived at the scene was Customs and Border Protection Officer Kevin Humes, who performed a routine inspection of Price's bags.  During that search, Humes found the note Price had written to A.M. stating that, "[i]f a man touches you and you don't want him to, always feel free to say no."

Price was then interviewed by FBI Special Agent David Gates and another officer. Prior to the interview, Gates verbally advised Price of his *Miranda* rights and had Price sign a *Miranda* waiver. During the interview, Price again claimed that A.M. had initiated the encounter by touching his hand. However, Price admitted "that he knew it was wrong to be engaging like this with a stranger without having a proper conversation." Price also said he touched A.M. because it "felt good."

## B

Price was indicted for unlawful sexual contact in violation of 18 U.S.C. § 2244(b). At trial, Price requested a jury instruction stating that the government must prove that he knew that A.M. had not consented to sexual contact. The district court rejected Price's request, and instead instructed the jury consistent with the Ninth Circuit model jury instruction, which provided that the modifier "knowingly" in 18 U.S.C. § 2244(b) applies only to the clause "engages in sexual contact with another person." *See* Manual of Model Criminal Jury Instructions § 8.180 (2010) (Ninth Cir. Jury Instructions Comm., amended 2019). Price appealed his conviction, and the panel affirmed. The panel divided 2–1 on the issue of whether the district court properly denied Price's requested instruction, but all three judges concluded that any error was harmless beyond a reasonable doubt.

## II

The statute under which Price was convicted imposes criminal penalties on anyone who, within specified areas of federal jurisdiction (which include the LAX-bound international flight at issue here), "*knowingly* engages in sexual contact with another person without that other person's permission." 18 U.S.C. § 2244(b) (emphasis

added).[2]     The panel majority holds that the term "knowingly" only applies to a *portion* of this single 13-word phrase, and not to the entirety of the phrase.  Opin. at 10–25.  Specifically, the majority concludes that the "most natural grammatical reading" of the phrase is that the "term 'knowingly' modifies only the verb phrase 'engages in sexual contact with another person' and does not modify the adverbial prepositional phrase 'without that other person's permission.'"  *Id*. at 12.  According to the majority, this supposedly  "natural  grammatical  reading"  is  so overwhelmingly linguistically preferable that it liberates the panel majority from having to apply *any* of the relevant interpretive canons established by the Supreme Court and invoked by Judge Gilman in his separate opinion.  For multiple reasons, the panel majority's reading of the statute is untenable.

---

[2] Section 2244(b), which is contained in chapter 109A of title 18 of the U.S. Code, states that it applies within the "special maritime and territorial jurisdiction of the United States."  *See* 18 U.S.C. § 2244(b).  A different statute further provides that any act that would violate "chapter 109A of title 18" if committed within "the special maritime and territorial jurisdiction of the United States" is also an offense if committed by an individual "on an aircraft in the special aircraft jurisdiction of the United States."  49 U.S.C. § 46506.  Because the "special aircraft jurisdiction of the United States" includes an "aircraft outside the United States" that "has its next scheduled destination . . . in the United States, if the aircraft next lands in the United States," *see id*. § 46501(2)(D)(i), section 2244(b)'s proscriptions applied on the flight in question.

## A

### 1

As an initial matter, the panel majority's construction of § 2244(b) cannot be correct, because it would render the word "knowingly" wholly surplusage.

According to the panel, the *only* role that "knowingly" plays in § 2244(b) is to modify the phrase "engages in sexual contact with another person," presumably to distinguish between those who engage in such contact wittingly and those who do so unwittingly. The problem with this reading is that it overlooks the express statutory definition of the term "sexual contact," which *already* contains a *more demanding* scienter requirement that applies to the underlying act of intimate contact. *See* 18 U.S.C. § 2246 (providing definitions for "this chapter," *i.e.*, chapter 109A of Title 18, which includes § 2244). As defined in § 2246, "the term 'sexual contact' means the *intentional* touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person *with an intent* to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3) (emphasis added). Reading § 2244(b) together with this accompanying definition of "sexual contact," a person thus only "knowingly engages in sexual contact with another person" by "*knowingly* engaging in the *intentional* touching" of specified intimate body parts with a specific "*intent* to abuse, humiliate," etc. 18 U.S.C. §§ 2244(b), 2246(3) (emphasis added). Because one cannot *unknowingly* engage in *intentional* touching—much less do so with the specific "intent" required by the statute—the majority's reading of § 2244(b) renders the word "knowingly" wholly superfluous, if not nonsensical. Why would Congress add a *lesser* scienter requirement ("knowingly") for the sole

purpose of modifying a phrase that already requires "*intentional*" conduct performed with a particular specific intent?

By applying the word "knowingly" *only* to the portion of § 2244(b) that is expressly defined as "intentional touching," *see* Opin. at 12, the majority's reading of "knowingly" thus wrongly renders that word "nonsensical and superfluous," thereby violating "one of the most basic interpretive canons," namely, "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (simplified). The *only* non-superfluous role that the word "knowingly" can have in § 2244(b) is to modify the *entire* phrase "knowingly engages in sexual contact with another person without that other person's permission"—including the final adverbial prepositional phrase. On this basis alone, the only viable reading of § 2244(b) is that it requires the Government to prove that the defendant "knowingly" acted "without that other person's permission." *See Jones v. United States*, 529 U.S. 848, 857 (2000) ("Judges should hesitate to treat statutory terms in any setting as surplusage, and resistance should be heightened when the words describe an element of a criminal offense." (simplified)).

## 2

In their concurrence in the denial of rehearing en banc, the panel majority defends its choice to read "knowingly" out of the statute by claiming that a similar and consistent application of the canon against surplusage to the *other* subsections of § 2244 would produce absurd results. Denial Concur. at 58–64. That claim is both irrelevant and wrong.

**a**

As an initial matter, the logic of the panel majority's syllogism simply does not follow. Even if the panel majority were correct in contending that application of the canon against surplusage to the differently worded provisions in § 2244(a) and § 2244(c) would lead to absurd results—and it is not correct—all that would establish is that *those* provisions should perhaps be construed as containing surplusage (on the theory that, as to *those* provisions, the canon against surplusage must yield to the competing canon against absurd results).  But the panel majority never argues that application of the canon against surplusage to *§ 2244(b)* would yield absurd results, and it is clear that applying that canon to § 2244(b) would *not* do so.  Accordingly, the panel majority's detour through § 2244(a) and § 2244(c)—two provisions that have nothing whatsoever to do with this case—is entirely beside the point.

**b**

For the reader who nonetheless is interested in the majority's lengthy—and completely irrelevant—excursus on § 2244(a) and § 2244(c), it is worth explaining why the *premise* of the panel majority's faulty syllogism is also wrong: applying the canon against surplusage to those two subsections would *not* produce absurd results.

**(i)**

Section 2244(a) punishes a person who, within federal jurisdiction, "knowingly engages in or causes sexual contact with or by another person, if to do so would violate" a series of cross-referenced subsections (each of which prohibits certain "sexual *acts*"), "had the sexual *contact* been a sexual *act*."  18 U.S.C. § 2244(a)(1)–(5) (emphasis added).  Section

2244(a) thus specifies that all of the cross-referenced circumstances in which a "sexual *act*" is criminal also apply to "sexual *contact*" if the additional element in § 2244(a) is shown—*i.e.*, that the person "knowingly engages in or causes sexual contact with or by another person." The panel majority focuses on § 2244(a)'s cross-reference to 18 U.S.C. § 2241(c), which (*inter alia*) makes it a crime to "knowingly engage[] in a sexual act with another person who has not attained the age of 12 years." By cross-referencing this provision, § 2244(a) would thus be violated if (*inter alia*) (1) the defendant "knowingly engages in . . . sexual contact with . . . another person," 18 U.S.C. § 2244(a); and (2) he or she "*knowingly engages in [that sexual contact] with another person who has not attained the age of 12 years*," 18 U.S.C. § 2241(c) (replacing "sexual act" with "sexual contact" as per 18 U.S.C. § 2244(a)(5)) (emphasis added). According to the panel majority, in light of the definition of sexual contact as requiring *intentional* touching, applying the canon against surplusage to § 2244(a)'s incorporation of § 2241(c) would lead to the conclusion that "knowingly" in the above-italicized phrase must extend to "with another person who has not attained the age of 12 years." *See* Denial Concur. at 60–62. That, however, would run contrary to the express statutory provision, in 18 U.S.C. § 2241(d), that "[i]n a prosecution under subsection (c) of this section, the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years." *See* Denial Concur. at 62.

This argument is difficult to fathom. When § 2244(a) states that the conduct must be such that it "would *violate* . . . subsection (c) of section 2241 of this title had the sexual contact been a sexual act," 18 U.S.C. § 2244(a)(5) (emphasis added), it necessarily carries over *all* provisions that define what constitutes a "violat[ion]" of § 2241(c)—*including*

*§ 2241(d).*    Therefore, to the extent that § 2244(a)'s incorporation of § 2241(c) would *otherwise* have required proof of knowledge that the victim was under age 12, § 2241(d) carries over as well *and negates that inference.* Applying the ordinary rules of statutory construction to § 2244(a)'s incorporation of § 2241(c) thus does not lead to any conflict with congressional intent or to an absurd result.

The panel majority further insists, however, that (even setting aside any such issues arising from § 2244(a)'s cross-referencing of other provisions) applying the § 2246(3) definition of "sexual contact" to § 2244(a) leads to the further problem that the word "knowingly" in § 2244(a) *itself* would be rendered surplusage. According to the panel majority, because the "sexual contact" must be intentional (under § 2246(3)), the word "knowingly" in the key phrase "knowingly engages in or causes sexual contact with or by another person," 18 U.S.C. § 2244(a), has no work to do and is surplusage.[3]  Again, it is difficult to fathom what the panel majority thinks it has proved by making this argument.  At best, it would establish that there may be surplusage in § 2244(a) *that cannot be avoided.*  But the canon against surplusage is not an ironclad rule: it merely "requir[es] a court to give effect to each word '*if possible*'" and may in some cases be "'countered . . . by some maxim pointing in a different direction.'"  *Chickasaw Nation v. United States,*

---

[3] I agree with the panel majority that "knowingly" in this phrase cannot be construed to apply to the subsequent language in § 2244(a) that cross-references the various other provisions of Chapter 109A of Title 28 of the U.S. Code. *That* language is set off by precisely the sort of interruptive punctuation and phrasing that is missing in § 2244(b)— that language is contained in a *separate* clause beginning with "if" that is set off by a comma and then followed by an em dash and five lengthy separate subsections.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994).

534 U.S. 84, 94 (2001) (emphasis in original) (citations omitted).

In any event, the panel majority is wrong in concluding that "knowingly" has no work to do in § 2244(a). The panel majority overlooks the fact that, because § 2244(a) (unlike § 2244(b)) also applies to a defendant who "*causes* sexual contact with or *by* another person," § 2244(a) can also be applied to a defendant *who is different from the person who actually performs the sexual contact. Cf.*, *e.g.*, *Hammond v. Gordon County*, 316 F. Supp. 2d 1262, 1289 (N.D. Ga. 2002) (reviewing evidence that prison guards instructed inmates to engage in sex with each other). The added words in § 2244(a) thus would encompass situations in which the two scienter requirements—"knowingly" (in § 2244(a) itself) and "intentional" (from the definition of "sexual contact" in § 2246(3))—are not redundant because they apply to separate people.[4]

In short, the panel majority fails in its effort to show that ordinary principles of statutory interpretation, as applied to § 2244(a), would produce any absurdity or surplusage. The panel majority's discussion of this irrelevant statute—which

---

[4] I am myself perplexed that the panel majority finds my citation of *Hammond* "perplexing." *See* Denial Concur. at 61 n.8. To defeat a contention that a word in a statute is surplusage, it suffices to show that there are *conceivably* some fact patterns in which the word would play a role. Here, *Hammond* illustrates one sort of fact pattern that, as I explain in the text, disproves the majority's charge of surplusage with respect to § 2244(a). Because surplusage arguments are based on the text of the statute and the categories of conduct that the words of the statute proscribe, it is irrelevant whether there has yet been a case that has actually applied § 2244(a) in this manner. And I emphatically disagree with the panel majority's suggestion that it would be "absurd" to extend § 2244(a) to reach the sort of conduct described in *Hammond*.

is *not* the statute at issue in this case—is thus ultimately a distraction.

**(ii)**

The panel majority is even more wide of the mark in suggesting that applying the canon against surplusage would "interfere[] with the straightforward application of § 2244(c)." *See* Denial Concur. at 63. Section 2244(c) doubles the maximum term of imprisonment "[i]f the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years." 18 U.S.C. § 2244(c). According to the panel majority, "[a]pplying the dissent's logic, the mens rea of 'knowingly' would apply to the age element of § 2244(c)." Denial Concur. at 63. This strawman argument is incomprehensible, because the word "knowingly" *does not even appear in § 2244(c).* The text of § 2244(c) merely requires (1) "sexual contact that violates this section"; *and* (2) that such sexual contact "*is* with an individual who has not attained the age of 12 years." 18 U.S.C. § 2244(c) (emphasis added). There is no requirement that the defendant *know* that the individual was under age 12. Applying ordinary rules of statutory construction to § 2244(c) thus produces no problem with either surplusage or absurdity.

\*       \*       \*

In sum, the panel majority's lengthy digression concerning the text of § 2244(a) and § 2244(c)—neither of which is at issue in this case—is ultimately nothing more than a red herring.

## B

The panel majority's construction of § 2244(b) fails for the additional reason that it flagrantly violates the Supreme Court's clear—and recently reiterated—instructions about how to read scienter terms in criminal statutes. Specifically, the panel majority contravenes two distinct canons of construction about how to read the scope of a statute's express knowledge requirement.

## 1

The first canon is that, "'[a]s a matter of ordinary English grammar,' [courts] normally read the statutory term '"knowingly" as applying to all the subsequently listed elements of the crime.'" *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)). Under this "normal[]" rule, the modifier "knowingly" in § 2244(b) therefore applies to the *entirety* of the phrase "engages in sexual contact with another person without that other person's permission."[5]  18 U.S.C. § 2244(b). The panel majority simply defies *Rehaif* on this point, insisting that the panel majority's own understanding of "ordinary grammar," Denial Concur. at 64, is better than the "ordinary English

---

[5] The panel majority briefly suggests that, because this presumption does not apply to petty offenses, it should not be applied to § 2244(b), which *used to be* a petty offense. *See* Denial Concur. at 66. This anachronistic argument fails because, after § 2244(b) was amended in 2006 to increase the statutory maximum to two years, the statute no longer defines a petty offense, and *Rehaif*'s ordinary grammatical presumption fully applies to the current, *amended* statute (which is the version at issue here).

grammar" applied by the Supreme Court, 139 S. Ct. at 2196.[6]

The panel majority nonetheless insists that this case falls within an exception to this rule, *see* Opin. at 17, but that is wrong. The Supreme Court has acknowledged two such exceptions: (1) where the word "knowingly" is followed by a "long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends," *Rehaif*, 139 S. Ct. at 2196, and (2) where some of the elements that follow "knowingly" are "set forth in independent clauses separated by interruptive punctuation," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994). The second exception is obviously inapplicable, because the phrase "without that other person's permission" is not set off by *any* interruptive punctuation, not even a comma. The majority contends that the first exception *is* applicable, because the statutory phrase at issue is long enough to contain two "prepositional phrases including 'without that other person's permission.'" Opin. at 12. But the mere *twelve* words which follow "knowingly" in § 2244(b) can hardly be considered a long statutory phrase comparable to, for example, the more than *three dozen* words that followed "knowingly" in the *shorter* of the two provisions at issue in *X-Citement Video*. 513 U.S. at 68 (quoting 18 U.S.C. § 2252(a)(1), (2) (1988 ed. and Supp. V)). Indeed, the beginning of the phrase at issue—"without that other person's permission"—occurs only *eight* words after the word "knowingly." In contrast to the sorts of "long

---

[6] Indeed, the panel majority turns *Rehaif* on its head by declaring that Congress should have shown that it "clearly intended" to require knowledge of lack of permission by adding *another* use of "knowing" (or some other such term) immediately before the lack-of-permission phrase. *See* Denial Concur. at 59 n.4.

statutory phrase[s]" to which *Rehaif* adverted, the relevant language in § 2244(b) is simply too short to raise any serious question "about how far into the statute the modifier extends." 139 S. Ct. at 2196.

The panel majority also suggests that there should be a new exception to this canon for "adverbial prepositional phrase[s]." Opin. at 12, 16. According to the majority, *Flores-Figueroa* did not apply the term "knowingly" to such an "adverbial prepositional phrase," but only to the entirety of a *noun* phrase that was the "object" of the verb that "knowingly" modified. Opin. at 15–16. While *Flores-Figueroa* emphasized that "knowingly" ordinarily applies to the object of the transitive verb that "knowingly" modifies, *see* 556 U.S. at 650–51, neither it nor *Rehaif* stated that "knowingly" *only* applies to subsequent noun phrases, and not to adverbial prepositional phrases. On the contrary, *Rehaif* makes no distinction between subsequent parts of speech when it broadly states that "knowingly" ordinarily applies "'to *all* the subsequently listed elements of the crime.'" 139 S. Ct. at 2196 (emphasis added) (citation omitted); *see also Flores-Figueroa*, 556 U.S. at 650–51 (providing examples in which "knowingly" would extend to prepositional phrases following the verb). Nor is there any reason in law, linguistics, or logic why adverbial prepositional phrases should be carved out of this canon of construction. *Cf. Liparota v. United States*, 471 U.S. 419, 420, 424–34 (1985) (applying "knowingly" to the adverbial prepositional phrase "in any manner not authorized").

Moreover, the panel majority cites nothing to support its idiosyncratic view that, as a matter of grammar, "knowingly" should not be read to modify a subsequent adverbial prepositional phrase. The panel majority now claims that "[o]ur circuit has consistently and repeatedly

interpreted sentences containing similar prepositional phrases as *not* clearly modified by adverbs that precede the verb." Denial Concur. at 67 (emphasis in original). But several of the cited cases did not involve adverbial prepositional phrases at all. *See United States v. Lo*, 447 F.3d 1212, 1229 (9th Cir. 2006) (question was whether "knowingly" modifies "listed chemical" in "knowingly or intentionally—possesses or distributes a listed chemical"); *United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001) (question was whether "knowingly" modifies "who has not attained the age of 18 years" in "knowingly transports an individual who has not attained the age of 18 years"). Further, *United States v. Chang Ru Meng Backman*, 817 F.3d 662, 667 (9th Cir. 2016), involved the *jurisdictional* interstate commerce element, which *Rehaif* confirms is "*not* subject to the presumption in favor of scienter," 139 S. Ct. at 2196 (emphasis added).[7] And in *United States v. Flores-Garcia*, 198 F.3d 1119, 1121 (9th Cir. 2000), the prepositional phrase at issue ("under section 1182(a)(2) (insofar as an alien inadmissible under such section has been convicted of an aggravated felony)") modified an adjective ("inadmissible") that was alone sufficient to establish the wrongfulness of aiding and abetting such an alien; nothing comparable exists in the simple grammatical structure of § 2244(b). Finally, *United States v. Castagana*, 604 F.3d 1160 (9th Cir. 2010), did not involve the word "knowingly" at all. The question in that case was whether the words "with intent" in the phrase "with intent to convey false or misleading information" in 18 U.S.C. § 1038(a)(1) also modified the ensuing clause that described the further "circumstances" that had to be shown

---

[7] The majority is therefore wrong in contending that I have "dismiss[ed] *Backman* as contrary to *Rehaif*." *See* Denial Concur. at 67 n.11.

concerning "such information." *Id*. at 1162–63. We answered that question in the negative, noting that the latter clause used wording that "clearly indicated that Congress intended to apply an objective standard" to that clause. *Id*. at 1163. Nothing comparable exists in § 2244(b).[8]

## 2

The majority violates a further canon of construction that was expressly reaffirmed in *Rehaif*. As *Rehaif* explained, a court addressing how the word "knowingly" applies in a criminal statute must "start from [the] longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding *each* of the statutory elements that criminalize otherwise innocent conduct." 139 S. Ct. at 2195 (emphasis added) (citation and internal quotation marks omitted). The application of this presumption here is straightforward, and it requires applying the knowledge requirement to § 2244(b)'s without-permission element.

---

[8] The panel majority's reasoning is even more strained when it tries to analogize this case to *United States v. Crowder*, 656 F.3d 870 (9th Cir. 2011). Contrary to what the panel majority suggests, *see* Denial Concur. at 69 n.12, *Crowder* did not rely on anything resembling the majority's peculiar grammatical rule about adverbial prepositional phrases. Instead, *Crowder* concluded that its reading of the provision at issue there was the "more natural reading" of the statutory text; that its reading was consistent with the rule that "the use of the term 'knowingly' in a criminal statute generally does not require the government to prove 'knowledge of the law'"; and that the underlying conduct (failure to register) was "more closely analogous" to the sort of "public welfare offense" that "does not require the government to prove a mental element." *Id*. at 874–76 (citation omitted). Not one of these three features is present here.

The panel majority agrees that what "separate[s] wrongful conduct . . . from innocent conduct" in § 2244(b) is that "the victim did not consent, either explicitly or implicitly," Opin. at 17–18—*i.e.*, that the defendant acted "without that other person's permission." Because *that* is the "statutory element[]" which criminalizes what would "otherwise [be] innocent conduct," the "longstanding presumption" reaffirmed in *Rehaif* mandates that the Government show that the defendant "possess[ed] a culpable mental state regarding" *that* element. 139 S. Ct. at 2195. Under *Rehaif*, § 2244(b)'s "knowingly" requirement therefore extends to the wrongful-conduct-defining element that the defendant acted "without that other person's permission."

The panel majority provides two reasons for reaching a contrary view, but neither is persuasive. First, the majority holds that this presumption only applies when a scienter requirement *itself* is necessary to separate wrongful from innocent conduct. Opin. at 17–18; *see also id.* at 16 (likewise distinguishing *Flores-Figueroa* on the ground that there, "the *mens rea requirement* was necessary to 'separate wrongful conduct from otherwise innocent conduct'" (emphasis added) (citation omitted)). According to the panel majority, because § 2244(b)'s objective without-permission element is *alone* sufficient to separate between wrongful and innocent conduct, there is no reason to read the statute's scienter requirement as applying to that element. Opin. at 17–18. This reasoning reflects a clear misreading of *Rehaif* and would largely gut the canon of construction that it reaffirms. Under the panel majority's flawed reasoning, the very fact that *triggers* application of that presumption— *i.e.*, the fact that the without-permission element *is* the "statutory element[] that criminalize[s] otherwise innocent conduct"—somehow becomes the reason *not* to apply the

presumption. But *Rehaif* reaffirms that, whenever an element (such as this one) forms *the* critical dividing line between otherwise innocent conduct and wrongful conduct, it is the "longstanding presumption . . . that Congress intends to require a defendant to possess a culpable mental state regarding" that element.[9] 139 S. Ct. at 2195.

The panel majority's argument on this score confuses two distinct points that the Court made in *Rehaif*. In addition to reaffirming this "longstanding presumption" about how to read statutory language, *Rehaif* makes a separate but related point that goes "*[b]eyond the text*." 139 S. Ct. at 2196 (emphasis added). *Rehaif* explains that, *even in the face of a textual analysis that points away from scienter*, it may be necessary to read a scienter requirement into a statute in order to "separat[e] wrongful from innocent acts." *Id*. at 2196–97. In *those* cases, the scienter requirement *itself* supplies the dividing line. *See id*. At most, the panel majority's argument on this score might establish that this separate aspect of *Rehaif* is inapplicable here. That is, *if the* analysis of the statutory text of § 2244(b) did not point towards scienter, *then* it would not be necessary to nonetheless read a scienter requirement into that statute. But this argument does nothing to address the completely

---

[9] The panel majority continues to insist that the mere act of "sexual contact" is wrongful, *see* Denial Concur. at 69–71, but that is obviously incorrect, as Judge Gilman noted in dissenting on this point, *see* Gilman Concur. at 37. Moreover, the panel majority continues to describe the underlying *touching* criminalized by the statute as "groping" and "sexual battery," *see* Denial Concur. at 60 n.5, 69–71, but without realizing that the only thing that makes a sexual contact an act of "groping" or "sexual battery" is *the lack of permission*. Because *that* is inarguably the dividing line between a wrongful sexual contact and an innocent sexual contact, then under *Rehaif*, the word "knowingly" must be construed to extend to that element.

separate *textual* point that the *Rehaif* Court makes in an earlier and different section of its opinion, which is that a statutory scienter requirement presumptively applies to those critical elements in the statute that distinguish wrongful from otherwise innocent conduct. Because the panel majority concedes that the without-permission requirement is such a dividing line, *see* Opin. at 17–18, the presumption set forth in *Rehaif* dictates that, as a textual matter, § 2244(b)'s "knowingly" requirement presumptively extends to that element.

Second, and finally, the panel majority states that "*Rehaif* did not change the governing principles of statutory interpretation set out in prior cases," which have consistently emphasized the specific grammatical context of each statute. Opin. at 17. Because *Rehaif* "examined a different statute with different text, structure, and legislative history, addressing different conduct," the majority concludes, its broad language is not applicable here. *Id.*; *see also id.* at 15–16 (likewise criticizing Price for taking the comparably broad presumption in *Flores-Figueroa* "out of the context of the aggravated identity theft statute"). This argument fails, because the majority's assumption that *Rehaif* changed nothing about Ninth Circuit case law is wrong.

In particular, the majority overlooks the fact that *Rehaif* overruled our prior case authority holding that the "knowingly" requirement applicable to the unlawful-alien/felon-in-possession statute did *not* apply to the *status* element. *See United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997) (agreeing with other circuits that the knowledge requirement "applies only to the possession element of § 922(g)(1), not to the interstate nexus or to felon status"). After *Flores-Figueroa*, we continued to adhere to *Miller*, notwithstanding *Flores-Figueroa*'s broad language about

how to read "knowingly" in a criminal statute. Relying upon Justice Alito's concurrence in *Flores-Figueroa*, we held that the Court in that case did not intend to "announce an 'inflexible rule of construction.'"  *United States v. Stone*, 706 F.3d 1145, 1147 (9th Cir. 2013) (quoting *Flores-Figueroa*, 556 U.S. at 661 (Alito, J., concurring in part and concurring in the judgment)).  Instead, we emphasized that "statutory interpretation remains a contextual matter."  *Id.* That was followed by the overruling of *Miller* and *Stone* in *Rehaif*, which instead reaffirmed the broadly stated canons that we had wrongly evaded in *Stone* by confining them to the specific facts of the Court's prior cases.  139 S. Ct. at 2195–97.  And Justice Alito, on whose *Flores-Figueroa* concurrence we had relied in seeking to limit the Court's decision in that case, instead dissented in *Rehaif*, decrying the broad presumptions applied by the Court.  *Id.* at 2211–12 (Alito, J., dissenting).  Having failed to learn the lesson from *Stone*'s overruling in *Rehaif*, the panel majority commits the very same error by wrongly attempting to narrowly confine the canons set forth in *Flores-Figueroa* and *Rehaif* as being "specific to particular grammatical contexts."  Opin. at 16.

∗          ∗          ∗

For all of these reasons, and for the additional reasons set forth in Judge Gilman's persuasive separate opinion, the panel clearly erred—and disregarded controlling Supreme Court authority—in concluding that the term "knowingly" in § 2244(b) does not apply to the phrase "without that other person's permission."  We should have reheard this case en banc.

## III

I also disagree with the panel's conclusion that the omission of this statutory element from the jury instructions in this case was harmless error.  Opin. at 25 n.4 (adopting the harmless error analysis in Judge Gilman's separate opinion); Gilman Concur. at 51–54.  In my view, the panel's harmless error analysis impermissibly crosses a line when it *weighs credibility* in assessing whether a reasonable juror could have found in Price's favor on the missing scienter element.  The panel's novel approach to harmless error cannot be reconciled with the constitutional right to a jury trial on all elements of an offense.

## A

In *Neder v. United States*, 527 U.S. 1 (1999), a sharply divided Supreme Court rejected the view that the complete deprivation of a jury finding concerning an essential element of a criminal offense can never be harmless.  *Id*. at 8–15; *see also id*. at 30 (Scalia, J., joined by Souter and Ginsburg, JJ., dissenting) ("I believe that depriving a criminal defendant of the right to have the jury determine his guilt of the crime charged—which necessarily means his commission of *every element* of the crime charged—can never be harmless." (emphasis in original)); *id*. at 27 (Stevens, J., concurring in part and concurring in the judgment) ("My views on this central issue are thus close to those expressed by Justice Scalia.").  We are, of course, bound by that holding, but we are equally bound to stay within the "narrow" parameters that *Neder* establishes for conducting such a harmless error analysis.  *Id*. at 17 n.2.  The panel fails to do so and thereby "'become[s] in effect a second jury to determine whether the defendant is guilty.'"  *Id*. at 19 (quoting Roger Traynor, The Riddle of Harmless Error 21 (1970)).

Under the harmless error standards established in *Neder*, the "court, in typical appellate-court fashion, asks whether the record contains evidence that could *rationally* lead to a contrary finding with respect to the omitted element." 527 U.S. at 19 (emphasis added). This inquiry is the familiar one of assessing evidentiary *sufficiency*. Thus, "for example, where the defendant contested the omitted element and raised evidence *sufficient to support a contrary finding*," then "the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error," and the court "should *not* find the error harmless." *Id*. (emphasis added). By contrast, "where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee." *Id*. Adherence to this sufficiency standard concerning a missing element, the Court explained, ensures that an appellate court does not "'become in effect a second jury to determine whether the defendant is guilty.'" *Id*. (citation omitted). Any more permissive standard, however, would fail to "safeguard[] the jury guarantee." *Id*.

Under the familiar sufficiency standards that *Neder* references, credibility determinations are *exclusively* for the jury—not the courts—to make. Thus, for example, it is well settled that, when a court must evaluate whether the *government* has presented sufficient evidence to raise a triable issue as to each element of an offense, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *accord United States v. Nevils*, 598 F.3d 1158, 1170 (9th Cir. 2010). In perhaps the only analogous context in which a court considers whether a *criminal defendant* has presented sufficient evidence—namely, whether a defendant

has presented enough evidence to warrant an instruction on an affirmative defense—it is likewise settled that the "weight and credibility of the conflicting testimony are issues [for] the jury, not the court," to resolve. *United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993); *see also United States v. Bailey*, 444 U.S. 394, 414–15 (1980) (in court's assessment of whether testimony "meet[s] a minimum standard as to each element of the defense," it remains for the jury, "and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story").   And, of course, in the civil context, it is equally well-settled that, in assessing sufficiency, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also id*. ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

It follows from these principles that, in assessing whether there is sufficient evidence to support a finding in the defendant's favor on the missing element, the starting premise must be that the defendant's evidence is to be believed, and all inferences must be drawn in his or her favor.   But precisely because the jury is the sole arbiter of credibility, it likewise follows that the harmless error analysis under *Neder* cannot ignore any factual findings that the court knows the jury *did* make. *Cf. Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (harmless error review cannot ignore "the basis on which the jury *actually rested* its verdict" (emphasis in original) (simplified)).   In the context of this case—in which we know that the jury found, beyond a reasonable doubt, that Price lacked *objective permission*—the relevant sufficiency question under *Neder* is whether, on

this record, a reasonable jury could *both* (1) find beyond a reasonable doubt that Price lacked objective permission; *and* (2) possess a reasonable doubt as to whether Price subjectively believed that he had permission.

**B**

The panel's harmless error analysis is legally flawed under these standards. In reviewing the evidence, Judge Gilman concludes that, by convicting Price, the jury *necessarily* "believed A.M.'s story of what occurred on the flight over Price's story." Gilman Concur. at 52; *see also* Denial Concur. at 71–73 (same). He then proceeds to construe the record in the light most favorable to the *Government*, and concludes that, under A.M.'s version of events, "no reasonable juror could have found that Price subjectively believed" that he had permission. Gilman Concur. at 53. The problem with this approach is that, on the record of this trial, the jury could easily have found that Price lacked objective permission even if it believed his version of events. Thus, the fact that the jury convicted under the (deficient) instructions given in this case does not *necessarily* mean that the jury disbelieved any, much less all, of Price's testimony.

As the Government told the jury during closing arguments, the jury needed only to "find that [Price is] guilty of touching *one* of these [intimate] places *at any point* without her permission" in order to find him guilty. Here, the jury could easily have convicted Price based on his *first* touching of A.M. (on her breast) *even if they believed Price's version of that first touch*. That is, even if the jury believed Price's testimony that he *subjectively* thought he had consent to touch A.M.'s breast based on her alleged rubbing of his hand and his massaging her arm, the jury could easily conclude that such innocent gestures did not provide

*objective* evidence of consent to justify grabbing her breast. As the Government correctly noted in its closing arguments, A.M.'s actions up to that point *as described by Price* objectively did not justify a sexual contact: "Ask yourself, is touching someone's hand, does that give permission to be groped?" Because the jury could readily have convicted Price without ever having to have reached a unanimous decision as to whether Price was lying, we cannot say that the jury necessarily "believed A.M.'s story of what occurred on the flight over Price's story." Gilman Concur. at 52.

What is more, the Government emphasized no less than four times in its closing arguments that the jury did *not* have to find that Price *subjectively* believed he had permission, but only that he *objectively* lacked A.M.'s permission. Underscoring the distinction, the Government highlighted Price's affirmative answer to the FBI agent's question, "Is it possible that you totally misjudged the situation?"

Given that we have no relevant jury determination of credibility to fall back on, there is no basis upon which to conclude that Price's denials of subjective knowledge were insufficient, if believed by the jury, to raise a triable issue as to the missing scienter element. It follows that this court has no warrant, in assessing evidentiary sufficiency, to depart from the settled rule that the defense testimony on the missing element must be believed. This bright-line requirement, which is essential to "safeguarding the jury guarantee," *Neder*, 527 U.S. at 19, applies even when—as here—the defendant's testimony relevant to the missing element strikes us as patently incredible. The panel majority's implicit embrace of appellate weighing of a criminal defendant's credibility is unsupported by precedent and is anathema to the fundamental right to trial by jury in criminal cases—a right that the Framers considered so

important that they put in the Constitution twice.  *See* U.S. Const. art. III, § 2, cl. 3; *id.* amend. VI.

\*        \*        \*

I share the panel's disgust at Price's behavior, but that cannot justify either stripping a scienter element out of a criminal statute or dispensing with a jury trial on all contested elements.  The panel majority's revised statute may well be better than the one Congress wrote, and if I were in Congress, perhaps I would vote to make it law.  But "[b]ecause federal courts interpret, rather than author, the federal criminal code, we are not at liberty to rewrite it." *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 494 n.7 (2001).  And while the outcome of a retrial in this case may seem to us foreordained, the Constitution does not permit us "to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be." *Bollenbach v. United States*, 326 U.S. 607, 615 (1946).

I respectfully dissent from the denial of rehearing en banc.